COMMONWEALTH of Pennsylvania,

v.

**Jerome WALSH, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 2011.

Filed Jan. 18, 2012.

Frank Santomauro, Scranton, for appellant.

Lisa A. Swift, Assistant District Attorney, Scranton, for Commonwealth, appellee.

BEFORE: DONOHUE, OLSON and STRASSBURGER*, JJ.

OPINION BY STRASSBURGER, J.:

Jerome Walsh (Appellant) appeals from the order entered by the trial court following his conviction of indirect criminal contempt [1] for violating an order entered pur-

---

* Retired Senior Judge assigned to the Superior Court.

1. 23 Pa.C.S. § 6114.

suant to the Protection From Abuse Act.[2] We affirm.

Victim S.S., born in July 1993, is the daughter of Appellant's paramour. From the time she was five years old until August 2010, S.S. resided in her mother's home with Appellant, her mother, and her two minor step-siblings.[3] In August 2010, S.S. moved from Appellant's home after making allegations of sexual abuse against Appellant. S.S. presently resides with her older sister, Ashley.

On January 7, 2011, Ashley filed a Protection from Abuse (PFA) petition against Appellant on S.S.'s behalf, alleging that he had become violent with S.S. while S.S. was visiting her younger step-siblings at Appellant's home. This request was granted and a Temporary PFA order was entered against Appellant on behalf of S.S. On January 24, 2011, the Temporary PFA order was continued for a period of one month.

The order prohibits Appellant from having any contact with S.S. Specifically, the order provides

1. [Appellant] shall not abuse, harass, stalk or threaten [S.S.] in any place where [she] might be found.

2. Except as provided in paragraph 5 of this order [regarding custody of minor children], **[Appellant] shall not contact [S.S.],** or any other person protected under this order, by telephone or by any other means, including **through third persons.**

Temporary PFA Order, 1/24/2011, at 1 (unnumbered) (emphasis added).

On February 12, 2011, while the Temporary PFA order was still in effect, Appellant was alleged to have violated its terms by threatening to harm S.S. Specifically,

Appellant was alleged to have approached S.S.'s friend Sarah Craft (Craft) while she was at a bus stop across the street from a bar he was patronizing and instructed Craft to tell S.S. that if he (Appellant) saw her "she'd be fucked." N.T., 2/23/2011, at 10. In response, Craft contacted S.S. via cellular phone and informed S.S. about the encounter. Upon learning of the threats, S.S. contacted her sister Ashley who drove S.S. and Craft to the Scranton Police Station where they filed a report regarding the incident.

On February 12, 2011, a criminal complaint was filed against Appellant charging him with one count of indirect criminal contempt for violating the Temporary PFA order. On February 23, 2011, a hearing was held on Appellant's indirect criminal contempt charge. Following the hearing, Appellant was found guilty and sentenced to a term of six months' probation. Additionally, the trial court entered a Final PFA Order on February 23, 2011. The terms of the final PFA order remain effective for three years.

On March 2, 2011, Appellant filed a "Motion for New Trial/Hearing Pursuant to Pa.R.Crim.P. 720(B)(1)(a), Based Upon Potentially Exculpatory Evidence Requested By Defendant And Not Produced Pursuant to Criminal Subpoena No. 3468." This motion was denied by court order on March 9, 2011. This timely appeal followed. The trial court did not order Appellant to comply with Pa.R.A.P. 1925(b). Appellant presents six questions for our review. These claims of error have been renumbered for ease of disposition:

1. Whether the trial court erred in determining that [ (S.S.) ] was a protected person under the [Protection] From

---

2. *See* 23 Pa.C.S. §§ 6101–6122.

3. The record reflects that S.S.'s step-siblings are the biological children of Appellant and S.S.'s mother.

Abuse Act defined by [23 Pa.C.S. § 6102(a) ], when she shared no biological relationship with [Appellant], he was not her legal guardian or step father, nor did [ (S.S.) ] reside with [Appellant]?

2. Whether the alleged statements made by the Appellant to a 3rd party alone, not within the protected party's presence, can be deemed a violation of the January 24, 2011 temporary protection from abuse order?

3. Whether the trial court abused its discretion and violated [Appellant's] right of confronting and thorough cross-examination of his accusers, when the [Commonwealth's] only accusatory witness, after being served with a criminal subpoena to produce documents (i.e. cellular phone records) was excused by the trial court from producing the requested information, [upon the trial court's] ruling that the subpoena issued was untimely served under the [Pennsylvania] Rules of Civil Procedure?

4. Whether the trial court erred as a matter of law and abused its discretion in denying [Appellant's] motion for a new trial, when the [Commonwealth's] main and only accusatory witness, failed to honor [Appellant's] criminal subpoena to produce relevant and potentially exculpatory evidence, ruling that the subpoena violated the Pennsylvania Rules of Civil Procedure and that the subpoena could have been served on the [witness'] cellular telephone provider?

5. Whether the trial court violated [Appellant's] ability to confront his accusers and due process rights when refusing to allow Appellant the ability to call essential fact witnesses who directly rebut the allegations of [Appellant's] only accuser?

6. [Whether the verdict of the trial court was against the weight of the evidence.]

Appellant's Brief at 8.[4]

■ We note that "[i]n the context of a [PFA] order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *Stamus v. Dutcavich*, 938 A.2d 1098, 1100 (Pa.Super.2007) (citation omitted).

As a threshold issue, Appellant claims that the trial court erred in determining

---

4. Appellant appears to appeal from the court order dated February 23, 2011. This order is a final order with regard to Appellant's conviction for indirect criminal contempt. *Commonwealth v. Harper*, 890 A.2d 1078, 1081 (Pa.Super.2006) (In a criminal case, it is the judgment of sentence that constitutes a final order.) However, this order does not issue the final PFA order currently in effect. Accordingly, at first blush, it appears that Appellant's challenge to S.S.'s standing under the PFA statute has not been properly preserved. We have held

in order to avoid ... a delay in the disposition of the underlying case, we recommend that, when considering the use of criminal contempt, a trial judge assign a separate case number to the criminal matter so that [the PFA] can proceed of its own accord. Then the underlying action will not be affected by the taking of an appeal from any order entered in that separate action.

*Diamond v. Diamond*, 715 A.2d 1190, 1196 (Pa.Super.1998).

Instantly, the trial court complied with the recommendation set forth in *Diamond*. Nonetheless, the trial court included on its February 23, 2011 order both the civil court docket number related to the PFA proceeding, 11–CV–40037, as well as the miscellaneous docket number related to the indirect criminal contempt proceeding, MD–11–89. Moreover, the trial court addressed Appellant's oral motion to dismiss for lack of standing within the body of the February 23, 2011 order. Accordingly, as it appears that the trial court intended the February 23, 2011 order as both Appellant's judgment of sentence and as the final order as to issue of S.S.'s standing under the PFA Act, a claim Appellant litigated at the first available opportunity—the hearing on the allegations of indirect criminal contempt, we will address this claim.

that S.S. was a protected person under the Protection from Abuse (PFA) Act. Appellant argues the absence of a biological, step-parent, or guardian relationship with S.S., coupled with the fact that S.S. no longer resides in the same home with her mother or Appellant, necessarily requires a reversal of the trial court's order.

The trial court found that Appellant and S.S.'s mother have been in a relationship for 13 years and have resided together during that time. Trial Court Opinion, 4/13/2011, at 2. With regard to the relationship between S.S. and Appellant, the trial court found that Appellant had been involved in S.S.'s life since she was five years old; that S.S. had resided with Appellant for approximately 13 years, during which time Appellant treated S.S. as a step-daughter; and that S.S.'s decision to leave Appellant's residence and move in with her sister was based entirely on allegations of a sexual nature raised by S.S. against Appellant in August of 2010. *Id.* at 2–3. Based on this history, the trial court determined that S.S. was a protected party as contemplated by the PFA statute. We agree.

■■■ "The goal of the Protection from Abuse Act is protection and prevention of further abuse by removing the perpetrator of the abuse from the household and/or from the victim for a period of time." *Viruet v. Cancel,* 727 A.2d 591, 595 (Pa.Super.1999). The PFA Act operates to protect victims of domestic violence and permit the courts to respond quickly and flexibly to both early signs and subsequent acts of abuse with the issuance of protection orders. *See Commonwealth v. Snell,* 737 A.2d 1232 (Pa.Super.1999). The statute specifically provides protection for "family or household members" of the alleged abuser. The term "family or household members" is defined as "spouses or persons who have been spouses, persons

living as spouses or who lived as spouses, parents and children, **other persons related by** consanguinity or **affinity,** current or former sexual or intimate partners or persons who share biological parenthood." 23 Pa.C.S. § 6102 (emphasis added). Here, we must determine whether Appellant and S.S. are persons related by affinity.

The term "affinity" is not defined in the PFA Act. *See* 23 Pa.C.S. § 6102. The dictionary defines "affinity" as, *inter alia,* "related by marriage or by **ties other than those of blood.**" Webster's American Dictionary, 14 (2nd College ed.2000) (emphasis added). Instantly, S.S. has ties other than those of blood to Appellant as S.S.'s two half-siblings are the natural children of Appellant and S.S.'s mother. Given the remedial purpose of the PFA Act it is incumbent upon us to interpret "affinity" so as to include this relationship. Accordingly, we hold that the trial court did not err in determining that S.S. has standing under the PFA Act.

■■ In his second question, Appellant appears to challenge the sufficiency of the evidence produced by the Commonwealth. Our standard of review in assessing whether sufficient evidence was presented to sustain Appellant's conviction is well-settled. The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's

guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brumbaugh,* 932 A.2d 108, 109–10 (Pa.Super.2007) (citations omitted). To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. *Id.* 932 A.2d at 110 (citation omitted).

■ Appellant was alleged to have violated the Temporary PFA order when he told Craft to tell S.S. that if Appellant saw S.S., "she'd be fucked." N.T., 2/23/2011, 10. Therefore, in order to establish indirect criminal contempt the Commonwealth was required to prove that the PFA order was sufficiently specific to make it clear to Appellant that he was prohibited from contacting S.S. through a third party; that Appellant had notice of the PFA order; that he knowingly and willfully made threatening or harassing statements to Craft to be relayed to S.S. despite the terms of the PFA order; and that he made those statements with wrongful intent.

Appellant challenges only the first prong of the aforementioned test, arguing that his conduct on February 12, 2011 was "not clearly and specifically prohibited by the January 24, 2011, temporary protection from abuse order which under no circumstances prohibited Appellant from making statements to any third parties in relation to S.S." Appellant's Brief at 17–18. We disagree.

The first page of the January 24, 2011 Temporary PFA order contains the following provisions:

1. [Appellant] shall not abuse, harass, stalk or threaten any of the above persons in any place where they might be found.

2. Except as provided in paragraph 5 of this order [regarding custody of minor children], **[Appellant] shall not contact [S.S.],** or any other person protected under this order, by telephone or by any other means, including **through third persons.**

Temporary PFA Order, 1/24/2011, at 1 (unnumbered) (emphasis added). These mandates appear in the middle of the first page and are specifically designated as applicable to Appellant by virtue of an "x" appearing in the box next to each order.

■ Appellant does not claim he was unaware of the PFA order. Moreover, Appellant is presumed to have read the entirety of the PFA order, including the language which prohibits him from communicating threats to or harassing S.S. through third parties. The language of the Temporary PFA order was sufficiently specific to make it clear to Appellant that he was prohibited from contacting S.S. through a third party. Accordingly, we hold that the Commonwealth presented sufficient evidence to support the trial court's determination that he is guilty of indirect criminal contempt.

■ Appellant's next two challenges involve the trial court's decision to excuse Craft from producing her cellular phone records. Appellant claims the trial court erred in failing to enforce a subpoena served on Craft because compliance with the subpoena would have yielded potentially exculpatory information that would have exonerated Appellant and impeached Craft's credibility. By excusing Craft from presenting her phone records in court, Appellant asserts that the trial court violated his right to confront and cross-examine the Commonwealth's witness. Appellant's Brief at 18–22.

Whether a subpoena shall be enforced rests in the judicial discretion of the court. We will not disturb a discretionary ruling of a [trial] court unless the record demonstrates an abuse of the court's discretion. So long as there is evidence which supports the [trial] court's decision, it will be affirmed. We may not substitute our judgment of the evidence for that of the [trial] court.

*Commonwealth v. Cook,* 865 A.2d 869, 876 (Pa.Super.2004). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. Jackson,* 785 A.2d 117, 118 (Pa.Super.2001).

■ Instantly, Appellant served Craft with a subpoena *duces tecum* requesting she produce her cellular phone records from February 12, 2011, the date of Appellant's PFA violation. Craft was served with the subpoena on the evening of February 22, 2011, the night before Appellant's PFA violation hearing at which Craft was scheduled to testify. In making its determination that Craft was not required to comply with the subpoena the trial court found

[Appellant's] subpoena [*duces tecum*] requesting the production of any and all records for cellular telephones in possession of the witness, Sarah Craft, was not received by the witness until after business hours on the day prior to the hearing. [The trial court], pursuant to Pa. R.C.P. 234.5, did not find that the witness failed to comply with the subpoena as the witness did not have enough notice to produce the documents requested by defense counsel. Furthermore, [defense] counsel had the opportunity to subpoena the requested phone records directly from the phone company and failed to do so.

Trial Court Order, March 9, 2011. We find no error in the trial court's determination.

■ Pennsylvania Rule of Civil Procedure 234.1 regarding subpoenas, permits use of a subpoena to command a non-party to produce at trial or a scheduled hearing documents within that person's control. Pa.R.Civ.P. 234.1(b)(1). Section 234.1 does not explicitly contain a notice requirement. However, we do note that in general the recipient of a subpoena must be given reasonable notice in order to comply with the request. *See* Explanatory Comment 2002—Main Volume.

We agree with the trial court's assessment that a request made for cellular phone records after business hours the evening before a scheduled hearing is untimely. *See Commonwealth Financial Systems, Inc. v. Smith,* 15 A.3d 492, 503 (Pa.Super.2011). Moreover, we agree with the trial court that Appellant's counsel may have properly requested the records directly from the cellular phone company in advance of the hearing. Appellant could have also requested a continuance in order to obtain the records. Accordingly, as the

subpoena was served late, we hold that the trial court did not abuse its discretion when it declined to enforce the subpoena.

■ Appellant next argues that the trial court "violated [Appellant's] ability to confront his accusers and due process rights when refusing to allow Appellant the ability to call essential fact witnesses who directly rebut the allegations of [Appellant's] only accuser." Appellant's Brief at 8.

■ The admissibility of evidence is a matter solely within the discretion of the trial court. "Subject to the requirements of due process of law and of the constitutional rights of the parties, the court may make and enforce rules and orders covering any of the following matters, *inter alia:* (1) limiting the number of witnesses whose testimony is similar or cumulative." Pa.R.C.P. 223(1); *See Commonwealth v. Smith,* 548 Pa. 65, 694 A.2d 1086, 1091 (1997). As with any other evidentiary ruling, we will reverse the trial court's determination to exclude testimony only if there has been an abuse of discretion. *Id.*

The record reflects that Appellant presented the testimony of Josephine Manetti and Sandra Golay. Golay testified that Appellant was in her bar on February 12, 2011 with two other men, Bobby Bauck (Bauck) and Eric Jones (Jones), and that around noon that day Appellant took the bar trash out back to the dumpster for her. N.T., 2/23/2011, at 70–71. She testified that he was outside of the bar for less than a minute. *Id.*

Appellant also testified on his own behalf. His testimony was substantially similar to that of Golay: Bauck drove him to the bar after work. Bauck parked his vehicle in front of the bar. Around noon, he took the garbage out for Golay, the bartender. He never saw Craft, nor did he confront her. *Id.* at 83–85.

Following Golay's testimony, Appellant's counsel informed the court of his intent to call Bauck and Jones to testify on his behalf. *Id.* at 79, 101. The Commonwealth requested an offer of proof for each man's testimony. With regard to Jones, Appellant's counsel made the following proffer:

He's just going to corroborate exactly what Mrs. Golay just said and the fact that he was outside. He didn't see anybody there. When he went to the bank and came back he saw [Appellant] and [Bauck] outside get into their car. Nothing unusual happened.

\* \* \*

He will also corroborate that [Appellant] was drinking soda inside and that he was not drinking any alcoholic beverage inside.

*Id.* at 79–80.

Similarly, with regard to Bauck, Appellant's counsel proffered the following:

He would state that nothing occurred. There was no incident outside. He was always next to and with [Appellant]. And for that period of 30 seconds when he went out and came back in or less, there was nothing that occurred. They then left the bar, got into their vehicle—

*Id.* at 101.

The record reflects that the District Attorney stipulated to the testimony of each man. *Id.* at 80, 101. Moreover, the record shows that the purported testimony of the other two uncalled witnesses would have served no added purpose and would have been merely cumulative of testimony from other witnesses that Appellant was outside of the bar taking out the trash for 30 seconds and no altercation occurred while he was outside. *See Commonwealth v. Moore,* 373 Pa.Super. 603, 617, 542 A.2d 106, 113 (Pa.1988). In light of the two stipulations, the trial court's acknowledgement of the stipulated testimony, and the

cumulative nature of the proffered testimony, we find no abuse of the trial court's discretion in excluding Appellant's witnesses.

■■■ We turn to Appellant's final claim of error, that the verdict is against the weight of the evidence. We find this claim waived because Appellant failed to raise it properly at the conclusion of trial or in a post-sentence motion.

This Court has held that "a determination of criminal contempt is a criminal conviction, conferring on the contemnor all the negative characteristics of being a convicted criminal." *Diamond v. Diamond*, 715 A.2d 1190, 1195 (Pa.Super.1998). Such determinations are immediately appealable under both Pa.R.A.P. 313, if the determination is made prior to the resolution of the underlying action, or, under Pa.R.A.P. 341, where, as here, the criminal contempt verdict is issued contemporaneously with the PFA court's final order. *See id.* Thus, the Rules of Criminal Procedure governing post-trial practice are applicable here. Under Pa.R.Crim.P. 607(a), a claim that the verdict was against the weight of the evidence must be raised with the trial judge in a motion for a new trial: 1) orally, on the record, at any time before sentencing; 2) by written motion at any time before sentencing; 3) or in a post-sentence motion. *See* Pa.R.Crim.P. 607(a). Appellant did not raise a weight claim at the conclusion of trial or in his post-sentence motion. On March 2, 2011, Appellant filed a motion for a new trial which addressed only the issue of Craft's subpoena. The motion did not raise a weight of the evidence claim. As such, his claim is waived. *Commonwealth v. Priest,* 18 A.3d 1235 (Pa.Super.2011) (concluding that appellant's claim that the verdict was against the weight of the evidence was waived because it was not presented to the trial court in a post-sentence motion).

■■■ Even if we were to address the issue, we would nonetheless conclude it lacks merit.[5] Our standard of review for evaluating a weight of the evidence claim is well established:

Our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the [ ] verdict did not shock its conscience.

*Commonwealth v. Griffin,* 453 Pa.Super. 657, 684 A.2d 589, 597 (1996). Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. *Commonwealth v. Widmer,* 560 Pa. 308, 321, 744 A.2d 745, 753 (2000).

■■■ Instantly, the trial court found the Commonwealth's witnesses to be credible. Trial Court Opinion, 4/13/2011, at 4. In making this determination, the trial court reasoned,

[Craft], an eighteen (18) year old high school senior, testified that she saw [Appellant] taking out the trash, that [Bauck's] red car was parked outside of the bar and that [Appellant] was at the bar. There would be no reason for [Craft] to know this if she had not physically seen [Appellant] there. Although there were some inconsistencies in the testimony as to the time the incident occurred and what time [Appellant] arrived at the bar, the real consistencies were exactly what all of the witnesses

5. Although we recognize that weight of the evidence claims have been addressed in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that her verdict shocked her own conscience.

corroborated—that [Appellant] was at that bar and took out the trash.

*Id.* at 4–5.

The trial court's conclusion is supported by the record and will not be disturbed on appeal. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge DONOHUE files a Concurring Opinion.

## CONCURRING OPINION BY DONOHUE, J.:

I join in the majority's rationale and disposition of the issues it renumbers as 1–5. I join in the majority's rationale and conclusion that Issue 6, Appellant's weight of the evidence claim, has been waived. I do not join in the majority's notation that it is logically inconsistent for a trial court, in a non-jury trial, to test its verdict against a challenge to the weight of the evidence. Majority Op. at 622 n. 5. It is the hallmark of a diligent trial judge to admit, after a review of a transcript, that a substantive misunderstanding of evidence formed the basis of his or her verdict. Upon discovery of such an error, the verdict rendered may indeed shock the jurist's conscience mandating a reversal of the outcome.

Further, since the majority emphasizes that as an appellate court, we may not review the underlying question of whether the verdict is against the weight of the evidence, I believe it is logically inconsistent to then engage in an analysis of that very question. Since the claim was not raised in a post-trial motion, the trial court did not decide the weight of the evidence claim on its merits, and thus could not possibly have abused its discretion. For

this reason, I do not join in the majority's "even if" analysis.