J-A14007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| THERESA MARIE ULEN | |
| Appellant | No. 1703 MDA 2015 |

Appeal from the Judgment of Sentence September 8, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0000307-2015

BEFORE:  BOWES, OTT AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                              **FILED JULY 21, 2016**

Theresa Marie Ulen appeals from the judgment of sentence of six months probation imposed by the trial court after it convicted her of indirect criminal contempt.  We affirm.

On July 24, 2013, Renee Butts obtained a Protection from Abuse ("PFA") order against Appellant, her mother.  That order prohibited Appellant from directly or indirectly contacting Ms. Butts or her immediate family.  Appellant was additionally forbidden from abusing, harassing, stalking, or threatening any of the protected persons in any place where they might be found, and specifically, to "stay away from" their residence in Mechanicsburg, Pennsylvania.  PFA Order, 7/24/13, at ¶ 2.

* Retired Senior Judge assigned to the Superior Court.

During the afternoon on February 9, 2015, Ms. Butts observed a gold Ford Focus, which she recognized was Appellant's vehicle, driving slowly down Hunt Place, a street which can be seen from the rear of her house. Although the vehicle was the same color and model as the car owned by Appellant, Ms. Butts could not identify its occupants. Nevertheless, Ms. Butts was aware that none of her neighbors owned a car of that make, model, or color. Shortly thereafter, Ms. Butts drove to the entrance of her housing development to pick up her son from his bus stop. She noticed the gold Ford Focus stopped opposite the school bus. As her son approached her car, and the bus departed, Ms. Butts watched the Ford Focus continue slowly down Mulberry Drive. Ms. Butts saw her father driving the vehicle while Appellant was sitting in the passenger seat. Both individuals had turned to watch Ms. Butts's son exit the bus. She immediately contacted police.

Based on Ms. Butts's testimony, the trial court convicted Appellant of indirect criminal contempt. The court sentenced Appellant to six months probation, costs, and a $300 fine. Appellant timely appealed, and the court directed her to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the court authored its Pa.R.A.P. 1925(a) opinion. The matter is now ready for our review.

Appellant raises two issues for our consideration:

I. Was there insufficient evidence to support a finding of indirect criminal contempt as the order was not definite, clear, and specific such that there was no doubt or uncertainty in the mind of Appellant of the conduct prohibited?

II. Was there insufficient evidence to support a finding of indirect criminal contempt as the act constituting the violation was neither volitional nor committed with wrongful intent?

Appellant's brief at 5.

In analyzing a sufficiency challenge, we must determine "whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable a fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa.Super. 2015) (citations omitted). "In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. *Id*. In addition, the evidence "need not preclude every possibility of innocence." *Id*. The Commonwealth may meet its burden by wholly circumstantial evidence and "any doubt regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id*. Moreover, "in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Id*. Finally, "the trier of fact while passing

upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id*.

The Protection from Abuse Act permits a court to punish and hold in indirect criminal contempt a defendant who violates a PFA order. 23 Pa.C.S. § 6114(a). To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. *Commonwealth v. Walsh*, 36 A.3d 613, 618 (Pa.Super. 2012) (citation omitted).

Appellant first contends that the language contained in the PFA order was not definite, clear, or specific enough so that no uncertainty could exist as to what conduct was prohibited. Appellant's brief at 10. This argument challenges the first element of the offense. Appellant asserts the phrase "to stay away from [Ms. Butts's residence]," was not sufficiently defined, and thus, Appellant could not know how far from the subject property she had to remain. *Id*. We disagree.

The terms of the PFA order, beyond the phrase emphasized by Appellant, clearly delineate the conduct prohibited therein. Pursuant to the terms of the PFA order, Appellant was not allowed to "abuse, stalk, harass, threaten or attempt to use physical force," on Ms. Butts, her husband, or her

children, "in any place they might be found." PFA Order, 7/24/13, at ¶ 1. Appellant was also forbidden from having "ANY CONTACT with [the protected persons] either directly or indirectly . . . at any location . . . [and] is specifically ordered to stay away from [Ms. Butts's residence]." *Id*. at ¶ 2 (emphasis original).

The language highlighted by Appellant does not encompass the entirety of the prohibition affecting Appellant's conduct. Although Appellant is specifically barred from Ms. Butts's residence, she is generally restricted from contacting the persons protected under the PFA order "in any place they might be found," or having "any contact" at "any location." *Id*. at ¶¶ 1 and 2. Appellant's contention that the PFA order requires some measure of distance to render it unambiguous misses the mark since, when read together, the terms of the PFA order specifically outline that Appellant is not to be in any location where the protected persons reasonably might be found.

Instantly, the Commonwealth offered the PFA order into evidence. Given the clear language limiting Appellant's behavior, the Commonwealth presented sufficient evidence to prove that the terms of the PFA order were definite, clear, and specific as to leave no doubt in Appellant's mind as to what conduct was prohibited. Therefore, Appellant's assertion fails.

Appellant next assails the sufficiency of the Commonwealth's evidence that she acted volitionally or with wrongful intent. Appellant's brief at 12.

She first avers that, as Ms. Butts was unable to identify the occupants of the vehicle on Hunt Place, the Commonwealth failed to prove that Appellant's actions in this regard were volitional. *Id*. In the second instance, Appellant argues that, since she was merely a passenger when her husband drove passed the bus stop, it could not be proven that she wrongfully intended to be present at that place and at that time. *Id*. at 12-13.

Here, Ms. Butts testified that one hour after she observed a suspicious vehicle matching the make, model, and color of Appellant's car driving in her two-street neighborhood, she identified Appellant in that vehicle near her son's bus stop. Cognizant that no other resident in the small development owned a gold Ford Focus, sufficient circumstantial evidence established that Appellant was in the car when it was first observed on Hunt Place.

Similarly, the fact that Appellant was not the driver of the car during either of the two encounters is of no moment, as the terms of the PFA order proscribe Appellant from directly or indirectly, *i.e.*, through a third party, making contact with the protected individuals. Appellant and her husband intentionally entered the residential development, either waited or returned one hour later, and surveilled her son as he alighted his school bus. When viewed in the light most favorable to the Commonwealth, the evidence adduced at trial established beyond a reasonable doubt that Appellant intentionally and willfully embarked on a course of conduct that violated the terms of the PFA order.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/21/2016</u>