J-S12041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LING FONG RHODES, | : | |
| | : | |
| Appellant | : | No. 672 MDA 2016 |

Appeal from the Judgment of Sentence April 11, 2016
in the Court of Common Pleas of Luzerne County,
Criminal Division, No(s): 285-ICC-2016

BEFORE: PANELLA, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED APRIL 13, 2017**

Ling Fong Rhodes ("Rhodes") appeals from the judgment of sentence imposed after the trial court found her in indirect criminal contempt[1] for violating a final Order entered pursuant to the Protection from Abuse Act ("PFA"),[2] protecting her husband (hereinafter "Mr. R."). We affirm.

The trial court thoroughly set forth the relevant factual and procedural history in its Opinion, which we adopt as though fully set forth herein. *See* Trial Court Opinion, 9/28/16, at 1-6.

Rhodes now presents the following issue for our review: "Whether the evidence presented by the Commonwealth was sufficient to establish that [Rhodes] violated the conditions of her PFA Order and had direct contact

---

[1] 23 Pa.C.S.A. § 6114.

[2] *See* 23 Pa.C.S.A. §§ 6101-6114.

with M[.]B[.] or any of M[.]B[.]'s dependents?"[3]  Brief for Appellant at 4

(capitalization omitted).

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying this test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder[,] unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Walsh*, 36 A.3d 613, 618-19 (Pa. Super. 2012)

(citation and brackets omitted).

"A charge of indirect criminal contempt consists of a claim that a

violation of an order or decree of court occurred outside the presence of the

court.  Where a PFA order is involved, an indirect criminal contempt charge

is designed to seek punishment for a violation of the protective order."

*Commonwealth v. Baker*, 722 A.2d 718, 720 (Pa. Super. 1999) (*en banc*)

(citations omitted).

---

[3] M.B. is the daughter of Rhodes and Mr. R.  M.B.'s minor daughter, C.R., was the person who had answered the phone call.

> To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

**Walsh**, 36 A.3d at 619.

Rhodes argues that the Commonwealth failed to present sufficient evidence to meet all elements of indirect criminal contempt beyond a reasonable doubt, as it "was unable to prove where the phone calls in question were coming from, and who was making the alleged calls." Brief for Appellant at 7. Rhodes points to her trial testimony that, at the time the calls were made, she was confined at the Luzerne County Correctional Facility ("LCCF"), and purportedly "had no money on her books in order to make any calls out of the facility." *Id.* at 7-8. Rhodes further points out the testimony of M.B. that the caller ID showed that both phone calls were "out of area," and, according to Rhodes, "the residence that M[.]B[.] received these calls at was in Bear Creek, Pennsylvania, which is in the same county as the LCCF." *Id.* at 8. Finally, Rhodes argues that Trooper Robert Urban did not make an inquiry of the telephone company as to the source of the telephone calls in question. *Id.*

Rhodes challenges only one element of indirect criminal contempt,

- 3 -

namely, her identity as the caller.[4] "It is settled law that a witness may testify to a person's identity from h[er] voice alone." **Commonwealth v. Jones**, 954 A.2d 1194, 1197 (Pa. Super. 2008) (citations, brackets, and internal quotation marks omitted). Moreover, "the weight to be accorded voice identification testimony is a question for the trier of fact." **Id.** (citations and internal quotation marks omitted).

C.R. unequivocally testified that she recognized her grandmother's (Rhodes's) voice on the telephone. N.T., 3/31/16, at 24-26. The trial court, as the fact-finder, expressly credited C.R.'s testimony, and found it to be more credible than the denial of Rhodes. **See** N.T., 3/31/16, at 48; Trial Court Opinion, 9/28/16, at 8; **see also Commonwealth v. Furness**, 2016 PA Super 298, *14 (Pa. Super. 2016) (stating that assessments of credibility and conflicts in evidence are for the fact-finder to resolve, and that this Court is not permitted to reexamine weight and credibility determinations or substitute our judgment for that of the fact-finder). Moreover, even though no telephone records were presented to prove the source of the calls in question, the testimony of C.R. (and M.B.) was alone sufficient to prove that Rhodes was the caller. **See Jones**, 954 A.2d at 1197; **see also Walsh**, **supra**.

---

[4] In its Opinion, the trial court concisely addressed all of the elements of indirect criminal contempt and determined that Rhodes's sufficiency challenge to the conviction lacks merit. **See** Trial Court Opinion, 9/28/16, at 6-8.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/13/2017</u>

**IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY**

COMMONWEALTH OF PENNSYLVANIA: IN THE COURT OF COMMON PLEAS
                              :           OF LUZERNE COUNTY

            v.                :           <u>CRIMINAL DIVISION</u>

LING FONG RHODES          :

     Defendant            :  NO.  285 ICC 2016

## OPINION

This matter comes before the Court on the Appeal of Ling Fong Rhodes (hereinafter the "Appellant") from an Order dated March 8, 2016, wherein the Appellant was found guilty of Indirect Criminal Contempt.

## PROCEDURAL HISTORY

By way of history, on January 14, 2016, C▇▇▇ E. R▇▇▇▇, Appellant's husband, filed a Petition for Protection from Abuse ("PFA") against the Appellant. In the petition, Mr. R▇▇▇▇ alleges that on or about January 13, 2016, at approximately 9:45 p.m., Appellant engaged in the following abusive behavior: (1) After drinking since 9:30 a.m., Appellant pushed and shoved Mr. R▇▇▇▇ throughout the day; (2) Appellant cursed and made derogatory remarks to Mr. R▇▇▇▇ throughout the day; (3) Appellant placed rubber gloves on her hands, picked-up a .38 special plus "P" revolver, and fired the weapon at Mr. R▇▇▇▇' ear; (4) Appellant then called 911, lied to the dispatcher and told them that Mr. R▇▇▇▇ was crazy; and (5) the State Police arrived at the R▇▇▇▇' residence, observed the fired rounds which struck the chair, wall, and other furniture. A Temporary PFA Order was entered and a hearing was scheduled for January 21, 2016.

1

Thereafter, Defendant requested a continuance and the final Hearing was scheduled for February 18, 2016.

After the hearing on February 18, 2016, the court entered an Order granting Mr. R████ PFA Petition and entered the following relief:

1. Defendant shall not abuse, stalk, harass, threaten or attempt to use physical force that would reasonably be expected to cause bodily injury to Plaintiff or any other protected person in any place where they might be found.

2. Defendant is completely evicted and excluded from the residence at: 6███ ████████ Blvd, Bear Creek, PA.

3. Except as provided in Paragraph 5 of this order, Defendant is prohibited from having **ANY COTNTACT** with Plaintiff, either directly or indirectly, or any other person protected under this order, at any location, including but not limited to any contact at Plaintiff's school, business, or place of employment. (emphasis in the original)

4. Except as provided in paragraph 5 of this Order, Defendant shall not contact Plaintiff, or any other person protected under this Order, by telephone or by any other means, including through third person.

In addition, the Court ordered that the firearm restrictions be imposed upon the Appellant.

On February 29, 2015, the Commonwealth filed two (2) counts of Contempt for Violation of Order or Agreement (ICC). The Hearing on the Indirect Criminal Contempt took place on March 31, 2016.

2

After the Hearing, the Court found Ms. Rhodes guilty of both ICC violations. Thereafter, Appellant filed a timely Notice of Appeal on April 22, 2016. In her rule 1925(b) Concise Statement of Errors to be Raised on Appeal raises one (1) issue:

    a. Whether the evidence presented by the Commonwealth was sufficient to establish that Ms. Rhodes violated the conditions of her PFA Order and had direct contact with M█████ B█████ or any of Ms. B████'s dependents?

At the outset, the Court notes that another PFA Order was issued against Appellant in the matter of *M████ B█████ v. Ling F. Rhodes*, No. 6478 of 2015. Although *B████ v. Rhodes* was still in effect on the day that Ms. Rhodes was charged with the violation at issue, no ICC was filed to this number. Therefore, the facts and evidence of record speak and are relevant only to *R████ v. Rhodes*.

## FACTS

At the ICC Hearing, the Court heard testimony from four (4) witnesses: M█████ B████, C█████ R█████, Trooper Robert Urban, and the Appellant, Ling Fong Rhodes. The Court will review the testimony that is relevant to the issue raised by Appellant in this appeal.

### M█████ B█████

Ms. B████ testified that C█████ and Ling Fong R█████ are her adoptive parents. As of February 2016, she has been residing with her father, at his residence, assisting in his care. She was aware that there were "problems" between her parents and that a PFA existed wherein the Appellant was to have no contact with Mr. R█████.

3

According to Ms. B████, on the evening of February 29, 2016, at approximately 9:00 p.m. the phone rang. Ms. B████ asked her twelve (12) year old daughter, C████ R████, to check the caller ID. C████ did so and indicated that the caller ID registered "out of area". Specifically, Ms. ████ gave her daughter permission to answer the phone.

She further testified that her daughter picked-up the phone near her and that she could distinctly hear her mother say "Hello" four (4) times. Ms. B████ attested to being familiar with Appellant's "very distinct and recognizable voice." (N.T., March 31, 2016, 6: 16-19). After that, Ms. B████ directed C████ to end the call, wherein C████ hung-up the phone. Immediately thereafter, the phone rang again, with the caller ID also indicating "out of area." However, no one answered the call.

On cross examination, Ms. B████ acknowledged that she was aware that on the date and time of the call, Appellant was incarcerated at the Luzerne County Correctional Facility ("LCCF"). However, she was unaware as to whether LCCF appears as "out of area" on the caller ID and whether Trooper Urban checked the phone logs of LCCF to confirm that calls were made from LCCF to her residence.

She also acknowledged that her mother's sister calls regularly from Taiwan. However, she denied that her maternal aunt phoned on the date and time. Ms. B████ further testified that when her maternal aunt calls from Taiwan, her aunt says "Taiwan" because she cannot speak English. (N.T., March 31, 2016, 11: 12-14).

Finally, Ms. B████ admitted that she does not have a relationship with her mother.

4

**C████ R██████**

Twelve (12) year old C█████ R█████ was determined to be a competent witness and was sworn in to testify. C██████ testified that she resides in Bear Creek with her mother and grandfather. She recalls being at home the day of February 29th and recalls her mom directing her to answer the phone. C██████ indicated that the person said "hello" multiple times loud enough for her mother to hear. C██████ recognized the voice as her grandmother's. She also stated that her mother was in the bathroom adjacent to the bedroom.

C██████ revealed that she does not recall a second call and that her mother told her that her grandmother should not be calling the house because she could "get in trouble." (N.T., March 31, 2016, p. 27: 1-11).

**TROOPER ROBERT F. URBAN**

Trooper Robert F. Urban has been a trooper with the Pennsylvania State Police for twenty (20) years.

He testified that on February 29, 2016, that he responded to the home of M██████ B██████. During the interview, Ms. B██████ reported that she recently moved in with her father who had a PFA against her mother, Ling Fong. She further reported that on that day there was a phone call that she picked up and identified the caller as Ling Fong Rhodes.

After receiving this information, Trooper Urban investigated further by contacting LCCF and made inquiry as to whether there was a record of the call. Trooper Urban was informed by the sergeant that there are multiple phones and not all of the calls are recorded. He noted, for example, telephone calls from the counselor's office are not

recorded. He did not ask whether LCCF is out of the Bear Creek area. He also did not attempt to retrieve phone records from the phone company.

His investigation further revealed that there were two (2) PFA orders issued against the Appellant. Those being Mr. R█████ versus Ling Fong Rhodes and M█████ B█████ and her daughter versus Ling Fong Rhodes. The trooper was aware of past incidents involving this family.

## Ling Fong Rhodes

*Mr. R.*

Ms. Rhodes testified that she is married to █████████. The Appellant testified that she was, on the date and time in question, incarcerated at LCCF. She emphatically denied making a call to the residence of Mr. R█████. In addition, on February 29, 2016, Ms. Rhodes testified that she did not have any money on the books at the prison. She testified that she did not call from a counselor's office nor use any other phone.

## LAW

To establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) contemnor must have acted with wrongful intent. *Commonwealth v. Brumbough*, 932 A.2d 108,109-10 (Pa.Super.2007).

Appellant was alleged to have violated the PFA Order when she phoned the residence of Mr. R█████. Therefore, in order to establish indirect criminal contempt the Commonwealth was required to prove that the PFA order was sufficiently clear to the Appellant that she was prohibited from contacting Mr. R█████; that Appellant had notice

6

of the PFA order; that she knowingly and willfully contacted Mr. R██████ despite the PFA order; and she called with the wrongful intent.

The second page of the February 18, 2016 Final PFA order contains the following provisions:

3. Except as provided in paragraph 5 of this order, Defendant is prohibited from having **ANY CONTACT** with Plaintiff, either directly or indirectly, or any other person protected under this order, at any location, including but not limited to any contact at Plaintiff's school, business, or place of employment. Defendant is specifically ordered to stay away from the following locations for the duration of this order.

4. Except as provided in paragraph 5 of this Order, Defendant shall not contact Plaintiff, or any person protected under this Order, by telephone or by some other means, including through third persons.

Final Protection from Abuse Order, February 19, 2016, at 2 (emphasis in the original).

These mandates appear in the middle of page 2 and are specifically designated as applicable to Appellant by virtue of an "X" appearing in the box next to each order.

Appellant does not claim that she was unaware of the PFA order. Moreover, Appellant is presumed to have understood the entirety of the PFA order, including the provisions that precludes her from contacting Plaintiff. The language of the Final Order was sufficiently specific to make it clear to Appellant that she was prohibited from contacting Mr. R██████. Accordingly, sufficient evidence was presented to support the trial court's determination that she was guilty of indirect criminal contempt.

Again, Appellant does not claim she was unaware of the PFA Order. Moreover, Appellant is presumed to have understood the entirety of the PFA order, including the language that she have NO CONTACT with Mr. R██████. *See Commonwealth v. Walsh*, 36 A.3d 613 (Pa.Super.2012). The language on the Final Order was sufficiently

7

specific to make it clear to the Appellant that she be prohibited from contacting Mr. R██████. *Id.*, at 619.

What Appellant is challenging is whether she had "direct" contact with M█████ B████'s or Ms. B████'s dependents. The Order is clear that Ms. Rhodes was not to have contact with Mr. R██████. The Order does not distinguish between direct or indirect. That is so because of the nature of the abuse. Abusers employ many forms of communication or contact to remind the victim that the abuser is in control and the victim cannot escape the abuser's watchful eye. In the case at bar, Ms. Rhodes had no legitimate reason for communicating with or contacting Mr. R██████.

Ms. Rhodes granddaughter identified her grandmother's voice and her testimony was determined to be credible.

The Court noted that the history with this family is tense and noted the bail conditions imposed on the Appellant as well as PFA's entered against Appellant.

Accordingly, the Court held that the Commonwealth presented sufficient evidence to support the finding of guilt of indirect criminal contempt.

**END OF OPINION**

8