J-S10003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KATHERINE A. CROOKS, ON BEHALF OF C.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW CALIBOSO | : | |
| | : | No. 1744 MDA 2025 |
| Appellant | : | |

Appeal from the Order Entered November 13, 2025
In the Court of Common Pleas of Berks County Civil Division at No(s):
25-14934

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED: APRIL 24, 2026**

Appellant Andrew Caliboso ("Father") appeals from the November 13, 2025 order entered in the Berks County Court of Common Pleas that granted the petition for protection from abuse ("PFA") that Katherine A. Crooks ("Mother") filed on behalf of ten-year-old C.C. ("Child") against Father, pursuant to the PFA Act, 23 Pa.C.S. §§ 6101-6122.  Upon careful review, we affirm.

The relevant factual and procedural history is as follows.  On September 30, 2025, Mother filed an *ex parte* petition for PFA against Father on behalf of Child.  The PFA court held an *ex parte* hearing and issued a temporary PFA order.

On October 6, 2025, and November 13, 2025, the court held hearings on the PFA petition and heard testimony from Mother, Father, and Child.  Child

testified, *inter alia*, that the last time she was at Father's house, Father was wearing a bath towel around his waist and opened it on purpose so Child "saw his penis." N.T. Hr'g, 10/6/25, at 13. Child testified that Father had pushed Child's head towards his genital region on several occasions. Child testified that Father had called her names, hit her in the face and on the arms, and held his hand over Child's mouth to the point that it was hard for Child to breathe.

On November 13, 2025, the court granted the PFA petition and issued a final PFA order to last for a period of three years. The court awarded Mother temporary exclusive custody of Child and gave Father no partial physical custody or visitation rights. The court directed that either party could initiate custody proceedings, and any subsequent custody order would supersede the custody arrangement in the final PFA order.

On November 24, 2025, Father filed a motion for reconsideration and modification. After a hearing, the court denied the motion for reconsideration on December 19, 2025. The court also denied Father's request for modification of the custody provisions without prejudice to Father's rights to seek modification of custody in separate custody proceedings.[1]

This appeal followed. Father and the PFA court complied with Pa.R.A.P. 1925.

---

[1] At the time of this appeal, Father has an active child custody proceeding pending in the Berks County Court of Common Pleas.

- 2 -

Father raises the following issues for our review:

1. Was the evidence insufficient to support the entering of a final [PFA] order as it was not proven by a preponderance of the evidence that abuse as defined by 23 Pa.C.S. [§] 6102 occurred?

2. Did the [PFA] court abuse its discretions in fashioning the following terms of the final PFA order: a) that [Father] shall have no contact with [Child] and that [Mother] shall have "exclusive" custody of [Child]; and] b) that it shall last for a period of three (3) years[?]

Father's Br. at 8 (unnecessary capitalization omitted)

In a PFA action, this Court reviews the PFA court's legal conclusions for an error of law or an abuse of discretion. **Custer v. Cochran**, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*). A PFA court does not abuse its discretion for a mere error of judgment; rather, we will find an abuse of discretion "where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill will." **Mescanti v. Mescanti**, 956 A.2d 1017, 1019 (Pa. Super. 2008) (citation omitted). Moreover, on appeal, this Court will defer "to the credibility determinations of the trial court as to witnesses who appeared before it." **Karch v. Karch**, 885 A.2d 535, 537 (Pa. Super. 2005) (citation omitted). It is well-settled that "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Walsh**, 36 A.3d 613, 619 (Pa. Super. 2012) (citation omitted).

In his first issue, Father asserts that the evidence was insufficient to prove that he abused Child. Father's Br. at 19-25. Father argues that "insufficient persuasive evidence exists to demonstrate" that the incident where he exposed himself to Child "was more than an uncomfortable incident[.]" *Id.* at 24.[2]

In considering the sufficiency of the evidence supporting a grant of PFA relief, "we review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party who prevailed before the PFA court." *Kaur v. Singh*, 259 A.3d 505, 509 (Pa. Super. 2021). The petitioner need only establish her case by a preponderance of the evidence to be entitled to relief. *Custer*, 933 A.2d at 1058; *see also Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004) (defining preponderance as "the greater weight of the evidence, *i.e.*, to tip a scale slightly"). Indeed, "[t]he petitioner's testimony is sufficient if it is believed by the trial court." *Custer*, 933 A.2d at 1058.

The PFA Act defines the term "abuse" in pertinent part as "[a]ttempting to cause or intentionally, knowingly or recklessly causing bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual

---

[2] Father also argues that the physical abuse detailed by Child was acceptable corporal punishment under his parental privilege rather than physical abuse. *Id.* at 23. Father did not assert this argument during the PFA hearing and instead specifically stated that he had "never" struck Child "out of violence" or "out of disciplinary measures." N.T. Hr'g, 11/13/25, at 78. As this novel argument concerning parental privilege was not presented to the PFA court, it is waived. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

assault, aggravated indecent assault, indecent assault, or incest"; "[p]lacing another in reasonable fear of imminent serious bodily injury"; "[p]hysically or sexually abusing minor children"; or "[k]nowingly engaging in a course of conduct or repeatedly committing acts toward another person . . . under circumstances which place the person in reasonable fear of bodily injury." 23 Pa.C.S. § 6102(a)(1), (2), (4), (5). When evaluating evidence in a PFA case, "the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury[.]" *Raker*, 847 A.2d at 725.

Here, the PFA court found "[Child] to be extremely credible and did not find [Father] to be credible." PFA Ct. Op., 1/6/26, at 9. The court further explained that:

> In view of [the court] finding the testimony of [Child] to be so believable, and [Father's] explanation for his conduct not to be worthy of belief, the [c]ourt found the [] evidence supported the finding of abuse. Specifically[,] the [c]ourt found the testimony about [Father] hitting [Child] in the face and on the arms to the point of causing pain, along with holding his hand over [Child]'s mouth such that it was difficult for her to breathe were attempts to cause or intentionally, knowingly, or recklessly causing serious bodily injury. [Father's] decision to expose himself to [Child] along with her testimony that he pushed her head toward his genital region constituted sexual abuse or exploitation [] as defined in the [PFA] Act. Finally[,] the physical abuse and the sexual abuse viewed collectively . . . leads to a conclusion that [Father] knowingly engaged in a course of conduct that creates a reasonable fear of bodily injury.

*Id.* at 11-12.

- 5 -

Father's sufficiency argument is, in essence, a challenge to the PFA court's determination regarding the weight of the evidence.[3] Father argues that his narrative of the facts demonstrates that the evidence does not meet the statutory definition of "abuse." Father's Br. at 22-24. Our review of Father's argument reveals that Father is, in essence, challenging the PFA court's credibility and weight determinations by presenting a self-serving interpretation of the facts and asking this Court to draw inferences favorable to him. This runs counter to our well-established standard of review which is to review the record as a whole and make reasonable inferences favorable to the party that prevailed before the PFA court.

Moreover, our review of the record reveals that the evidence supports the PFA court's finding of abuse. Child credibly testified that Father had exposed his genitals to her, pushed her head towards his genital region on several occasions, called her names, hit her in the face and on the arms, and held his hand over Child's mouth to the point that it was hard for her to breathe. N.T. Hr'g, 10/6/25, at 13-20. Child testified that she was afraid of Father. *Id.* at 20. Child's testimony supports the PFA court's conclusion that Father knowingly engaged in a course of conduct that created a reasonable

_____

[3] We note that Father has not preserved a challenge to the weight of the evidence on appeal because, *inter alia*, he has not raised it in his Rule 1925(b) Statement of Errors. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement [] are waived.").

fear of bodily injury. Thus, the evidence was sufficient to meet the requirements to issue the PFA order.

Father next asserts that the PFA court erred in preventing Father from "exercising legal custody rights or having any contact with [Child]" because "[c]ustody is much better addressed through custody actions." Father's Br. at 31. Specifically, Father contends that "a court may only completely suspend physical custody in a PFA order if a custody order does not already exist or [the PFA court has made a] specific finding of 'serious abuse'" and that here, a custody arrangement was already in place and the court made no finding on the record of "serious" abuse. *Id.* at 28. Father also asserts that the court improperly altered Father's legal custody rights by granting Mother "exclusive custody" of Child. *Id.* at 30.

"The purpose of the [PFA] Act is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring." *C.H.L. v. W.D.L.*, 214 A.3d 1272, 1281 (Pa. Super. 2019). The PFA Act allows PFA courts to grant, modify, or deny custody and "[i]t is well-settled that trial courts have the authority to enter [PFA] orders that conflict with custody orders." *Id.* For instance, "[w]here the court finds after a hearing [] that the defendant has inflicted serious abuse [] or poses a risk of abuse toward the plaintiff or a child, the court may . . . deny the defendant custodial access to a child." 23 Pa.C.S. § 6108(a)(4)(iii)(B). A PFA court can award temporary custody on an emergency basis to protect a child until a final custody hearing can be held. *C.H.L.*, 214 A.3d at 1282.

- 7 -

This Court has explained that:

> We recognize the apprehension that some could exploit the PFA Act, *i.e.* that dishonest parents might utilize a protection order as a vehicle to bypass the Child Custody Act and obtain a backdoor custody modification. The Domestic Relations Code accounts for the potential exploitation by separating the custody issue into two inquiries: first, a PFA court addresses the exigent risk of abuse posed to the child as well as the petitioner; thereafter, the custody court determines the child's best interests. This procedure safeguards the rights [of] both parties in their dual roles as PFA litigants and as parents.

*Id.* at 1284.

Here, the PFA court properly exercised its discretion when it temporarily granted Mother exclusive custody of Child and prohibited Father from contacting Child in order to protect Child from Father's abuse. Modification of an existing custody arrangement is contemplated and permitted by the PFA Act and the court may deny a defendant custodial access to a child if that defendant "has inflicted serious abuse" **or** "poses a risk of abuse toward the plaintiff or a child." 23 Pa.C.S. § 6108(a)(4)(iii)(B). This remedy is especially important where, as here, the PFA petition is filed on behalf of a minor child against a custodial parent. Here, the PFA court found that Father had abused Child and posed a risk of continuing abuse toward Child and, thus, removed Father's access to Child.

Most importantly, the PFA order safeguarded Father's rights by specifically permitting Father to file a petition to modify custody, and Father currently has a related child custody proceeding pending at a separate docket. The PFA order explicitly directed that any custody order arising out of this

ongoing custody proceeding will supersede the custody arrangement in the PFA order. The PFA court, thus, did not err in modifying the existing custody arrangement for Child's protection.

Father also asserts that the PFA court erred in setting a three-year period for the PFA order because he will not be able to contact Child during that time and custody proceedings "will be able to address the matters in [the f]inal PFA [o]rder in much less time than three years." Father's Br. at 31. The PFA Act states that a court may enter a final protection order for "a fixed period of time not to exceed three years." 23 Pa.C.S. § 6108(d). We reiterate that Father has already initiated custody proceedings, the outcome of which will supersede the temporary custody provisions set forth in the PFA order. The PFA court, thus, acted within the scope of the PFA Act and within the bounds of its discretion when it entered the PFA order for a three-year period.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/24/2026

- 9 -