J-S16008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASHEED HARRIS | : | |
| | : | |
| Appellant | : | No. 2093 EDA 2017 |

Appeal from the PCRA Order May 19, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0506941-2006

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED AUGUST 24, 2021**

Appellant, Rasheed Harris, appeals from the order dismissing his timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. Herein, Appellant raises ten ineffective assistance of counsel ("IAC") claims, as well as claims regarding the trial court's jurisdiction, error by this Court, and that he is entitled to credit toward his sentence for time he spent in pre-trial incarceration. With respect to all but three claims, we affirm the PCRA court's order denying relief. As to the remaining three claims, those pertaining to the trial court's jurisdiction, Appellant's assertion that his trial counsel was ineffective for failing to file a requested appeal from the entry of *nolle prosequi*, and his time-credit for pretrial incarceration argument, we

---

[*] Former Justice specially assigned to the Superior Court.

vacate the portion of the PCRA court's order denying relief on those issues, and remand for further proceedings.

A full recitation of the facts underpinning Appellant's 2006 conviction for third-degree murder[1] and carrying a firearm without a license[2] are not necessary for the disposition of this appeal. Briefly, Dwayne Davis knew both Appellant and the decedent, Anthony Jones. On the evening of October 28, 2003, Davis saw Appellant shoot Jones on a schoolyard playground on West Venango Street in Philadelphia. *Commonwealth v. Harris*, No. 3018 EDA 2008, unpublished memorandum at 1-2 (Pa. Super. filed Sept. 5, 2012) (quoting Trial Court Opinion, 12/22/09, at 4-6)). Appellant subsequently made inculpatory statements regarding the shooting to Andre Lane and Artavius Coleman. *Id.* at 2-3. Lane gave a statement to police indicating that, a few days after the shooting, he overheard a conversation between Appellant and a third party in which Appellant incriminated himself as the shooter. *Id.* at 2. However, at trial, Lane admitted to knowing Appellant, but denied having any knowledge about the shooting. *Id.* Coleman, testifying pursuant to a plea agreement with federal authorities, stated that he had a discussion with Appellant in which Appellant admitted his role in the shooting, and asked Coleman to help him get in touch with Lane for the purposes of

---

[1] 18 Pa.C.S. § 2502(c).

[2] 18 Pa.C.S. § 6106.

persuading Lane to recant his statement to police. *Id.* at 2-3.[3] No physical evidence connected Appellant to the crime. Based on the testimony of these witnesses, the jury convicted Appellant on January 18, 2008, of third-degree murder and carrying a firearm without a license.

At a sentencing hearing conducted on April 2, 2008, Appellant appeared *pro se*, after relinquishing his right to counsel following a full colloquy by the trial court. PCRA Court Opinion ("PCO"), 6/28/18, at 1. The trial court sentenced Appellant to 16-36 years' incarceration for third-degree murder, and a consecutive term of 3-6 years' incarceration for carrying a firearm without a license, constituting an aggregate sentence of 19-42 years' incarceration. The trial court denied Appellant's post-sentence motions, and he then filed a timely, *pro se* appeal. *Id.* at 2.

Appellant was initially appointed counsel for his direct appeal, however, he was again permitted to proceed *pro se* after the trial court conducted a *Grazier*[4] hearing. *Id.* Subsequently, this Court affirmed his judgment of sentence. *Commonwealth v. Harris*, 60 A.3d 843 (Pa. Super. 2012) (unpublished memorandum).[5] Appellant did not seek further review with our Supreme Court.

---

[3] *See also* N.T., 1/16/08, 98-99.

[4] *Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998) ("When a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one.").

[5] Appellant's petition for reargument was denied on October 22, 2012.

Appellant timely filed the instant PCRA petition on May 6, 2013. The PCRA court appointed counsel, and again Appellant sought leave to proceed *pro se*, which the PCRA court granted after conducting a ***Grazier*** hearing. PCO at 2. Appellant then filed a 235-page, amended PCRA petition on May 20, 2016. The PCRA court issued notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss the petition without a hearing, to which Appellant filed a timely response. The court dismissed the petition on May 19, 2017. Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement.[6] The PCRA court issued its Rule 1925(a) opinion on June 28, 2018. On November 21, 2018, this Court granted Appellant's "Application For Relief/Stay Proceedings Seeking to Designate Additional Portions of the Record to be Transmitted to the Appella[te] Court," and remanded this matter to the PCRA court for 30 days.

Appellant now presents the following thirteen issues for our review:

1. The PCRA court erred in denying relief where the [trial court] did not have subject matter jurisdiction[, as] the Commonwealth failed to file either a[] [criminal] information or criminal complaint.

2. The PCRA court erred in denying relief and/or a hearing on the issue that [Appellant] was denied counsel during a critical stage of the proceedings….

3. The PCRA court erred in denying relief and/or a hearing on the issue that trial counsel was ineffective for removing [Appellant] from a critical stage of the proceedings and not objecting that no colloquy was given regarding

---

[6] Appellant's Rule 1925(b) statement contained 35 issues.

[Appellant's] waiving his right to be present at every critical stage of the trial/proceedings.

4. The PCRA court erred in denying relief and/or a hearing on the issue that [trial] counsel was ineffective for failing to move for a mistrial where [Appellant] was denied the right to a fair and unbiased jury after outside contact [was made with the jury], and [where] the trial court erred in not questioning the entire jury [about the outside contact].

5. The PCRA court erred in denying relief and/or a hearing on the issue where [trial] counsel failed to consult with [Appellant] about his appeal rights.

6. The PCRA court erred in denying relief and/or a hearing on the issue that the trial court erred in not informing [Appellant] about his appeal rights.

7. The PCRA court erred in denying relief and/or a hearing on the issue that [trial] counsel failed to file an appeal after [Appellant] requested [one].

8. The PCRA court erred in denying relief and/or a hearing on the issue that double jeopardy had attached when the first jury selection was completely sworn and then dismissed[, and trial] counsel was ineffective for failing to object to the second trial [on that basis].

9. The PCRA court erred in denying relief and/or a hearing on the issue that [Appellant] was not given credit for all time spent in jail prior to [his] sentenc[ing].

10. The PCRA court erred in denying relief and/or a hearing on the issue that [trial] counsel was ineffective for not moving to suppress statements [Appellant] made to a federal informant.

11. The PCRA court erred in denying relief and/or a hearing on the issue that [trial] counsel was ineffective for failing to object to procedures utilized by the trial court which denied him the right to counsel.

12. The PCRA court erred in denying relief and/or a hearing on the issue that the trial court[,] PCRA court[,] this Court[, and the District Attorney] obstruct[ed Appellant's] direct appeal and PCRA proceedings.

13. The PCRA court erred in denying relief and/or a hearing on the issue that [Appellant] had to be physically rearrested after the [charges were *nolle prossed*,] and [trial] counsel was ineffective for not objecting.

Appellant's Brief at 7-8 (unnumbered pages) (unnecessary capitalization omitted).

We begin by noting our standard of review:

"Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Hanible**, 30 A.3d 426, 438 (Pa. 2011) (citing **Commonwealth v. Colavita**, 993 A.2d 874, 886 (Pa. 2010)). We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. **Id.** With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. **See Commonwealth v. Reid**, 99 A.3d 470, 485 (Pa. 2014). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013). The denial of an appellant's request for discovery is reviewed for abuse of discretion. **Id.**

To be entitled to PCRA relief, a petitioner bears the burden of establishing, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2), which include a violation of the Pennsylvania or United States Constitution or ineffectiveness of counsel, any one of which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i) and (ii). Further, the petitioner must show that the allegation of error has not been previously litigated or waived pursuant to 42 Pa.C.S. § 9543(a)(3); **See Commonwealth v. Baumhammers**, 92 A.3d 708, 714 (Pa. 2014).

*Commonwealth v. Mason*, 130 A.3d 601, 617–18 (Pa. 2015) (citations reformatted).

**I**

Appellant first argues that the trial court lacked subject matter jurisdiction because the Commonwealth failed to file a criminal complaint or information in this case.

> "Issues pertaining to jurisdiction are pure questions of law, and an appellate court's scope of review is plenary. Questions of law are subject to *a de novo* standard of review." *In re J.A.*, 107 A.3d 799, 813 n.15 (Pa. Super. 2015) (citation omitted). A subject matter jurisdiction challenge cannot be waived. *Commonwealth v. Jones*, … 929 A.2d 205, 210 ([Pa.] 2007).
>
> "Jurisdiction relates to the court's power to hear and decide the controversy presented. All courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code [pursuant to 42 Pa.C.S. § 931]." *Commonwealth v. Gross*, … 101 A.3d 28, 32 ([Pa.] 2014) (internal citation, quotation marks, and alteration omitted). There are two requirements for subject matter jurisdiction as it relates to criminal defendants: competency of the court to hear the case, and formal and specific notice to the defendant. *Jones*, *supra*.

*Commonwealth v. McGarry*, 172 A.3d 60, 65–66 (Pa. Super. 2017).

In support of his claim, Appellant points to the trial court docket, and correctly notes that it does not contain any entry for the filing of a criminal complaint or information. Appellant also cites our Supreme Court's holding that: "The right to formal notice of charges, guaranteed by the Sixth Amendment to the Federal Constitution and by Article I, Section 9 of the Pennsylvania Constitution, is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits

- 7 -

to the jurisdiction of the court." ***Commonwealth v. Little***, 314 A.2d 270, 273 (Pa. 1974), *aff'd*, 359 A.2d 788 (Pa. 1976).

Unfortunately, the PCRA court did not address this unwaivable claim in its Rule 1925(a) opinion, despite Appellant's raising it in his Rule 1925(b) statement. ***See*** Appellant's Rule 1925(b) Statement, 7/21/17, at 1 ¶ 2. The Commonwealth contends that

> [i]t is beyond dispute that the Commonwealth filed charging documents. A copy of the criminal complaint, dated on April 25, 2006, and signed by Detective Gerald Lynch, is in an "exhibits" file for this Court docketed in the Unified Judicial System Web Portal's entries for this case (Exhibits, 7/30/18, page 47 of 57). A copy of the bills of information, approved on May 24, 2006, can be found in a "trial court record received - sensitive documents" file for this Court that is also docketed in the Unified Judicial System Web Portal (Trial Court Record Received – Sensitive Documents, 7/30/18, pages 38-47 of 49).

Commonwealth's Brief at 12-13.

We are not convinced that the Commonwealth's timely filing of charging documents in this case is "beyond dispute." ***Id.*** at 12. We note that the Commonwealth does not dispute that the trial court's docket does not contain any reference to a criminal complaint or information. This suggests two possibilities. First, as Appellant claims, that the Commonwealth failed to timely file charging documents in this case, raising the prospect that Appellant was denied formal notice of the charges, thereby implicating the subject matter jurisdiction of the trial court. However, the second possibility is that the Commonwealth timely filed one or both charging documents, but court

error omitted them from the docket, suggesting clerical error or a breakdown by the court rather than a deprivation of constitutional rights.

In its first citation to the record, the Commonwealth suggests a complaint was filed on April 25, 2006. We note that this Court stated, during Appellant's direct appeal, that the Commonwealth charged Appellant by criminal complaint on April 28, 2006. *Harris*, No. 3018 EDA 2008, unpublished memorandum at 3. However, no citation was provided for that statement. The document referenced by the Commonwealth appears to be a criminal complaint charging Appellant with murder, possession of an instrument of crime ("PIC"), and multiple firearms violations, but it is dated April 30, 2006, and appears to have been signed[7] by a magistrate on May 1, 2006. Most importantly, there is nothing indicating a time stamp provided by the clerk of courts. Given the state of the record, we cannot tell if the document was filed at the beginning of the criminal proceedings at issue. Consequently, in the absence of any input from the PCRA court, we cannot determine, from the insufficient facts in the record before us, if this document constituted formal notice for purposes of Appellant's subject-matter jurisdiction claim.

The second document referenced by the Commonwealth appears to be a criminal information prepared by the district attorney, charging Appellant with murder, PIC, and firearms violations, which is internally dated May 25,

---

[7] The magistrate's signature line does not contain the magistrate's seal.

2006. However, as with the prior document, there is no time stamp by the clerk of courts indicating that it was filed immediately after it was prepared and approved by the district attorney, even though it now appears in the certified record. Accordingly, we cannot determine from the record whether this document was a properly-filed criminal information.

Although the record is not clear at this time, we are not yet convinced that Appellant is entitled to relief on this claim. There is ample evidence that Appellant was provided with actual notice of the charges he faced, which is at least indirect evidence that formal notice was provided. For instance, Appellant, through trial counsel, filed numerous pre-trial motions explicitly and implicitly acknowledging the nature of the charges, although without directly referencing a criminal complaint or criminal information. Additionally, Appellant had a preliminary hearing, after which the murder and firearm offenses were held for trial. Whatever doubt there may be about whether charges were formally filed in this case, Appellant certainly had actual notice of the charges he ultimately faced at trial.

Our Supreme Court held in **Little** that no less than **formal** notice, not actual notice, is required to invoke subject-matter jurisdiction. Our Supreme Court recently revisited **Little** in **Commonwealth v. King**, 234 A.3d 549 (Pa. 2020), stating:

> In **Little**, a coroner acted as a magistrate and held a preliminary hearing on murder charges. Little was then indicted by a grand jury and he entered a general guilty plea. In collateral proceedings[,] the trial court *sua sponte* declared that discharge was required because, *inter alia*, "the absence of a criminal

complaint from the record voided all subsequent proceedings[.]" *Id.* at 272. We stated that the court's competence to try the case was beyond question. "But to invoke this jurisdiction, something more is required; it is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged." *Id.* at 272–73. Formal notice, we said, "is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to the jurisdiction of the court." *Id.* at 273…. We ultimately held that formal notice was met by the grand jury's indictment.

*King*, 234 A.3d at 557 n.9 (parenthetical citations omitted).

Thus, under *Little*, formal notice was provided by something other than a criminal complaint or information. While Appellant was not indicted by a grand jury in this matter, it might be the case that formal notice akin to a grand jury indictment was provided by other procedural events, *e.g.*, Appellant's preliminary hearing. Nevertheless, this line of consideration may be all for naught. The *King* Court directly questioned whether its prior decision in *Little* remains good law:

Moreover, the continuing validity of *Little*'s statement that formal notice is a component of subject matter jurisdiction is suspect. We note that the United States Supreme Court later expressly disavowed that same view as a matter of federal law. *United States v. Cotton*, 535 U.S. 625, 631 … (2002) ("Insofar as it held that a defective indictment deprives a court of jurisdiction, [*Ex Parte*] *Bain*[, 121 U.S. 1 … (1887)] is overruled."). *Bain*, in turn, was cited in *Albrecht* while the *Commonwealth ex rel. Fagan*[8] case cited *Bain*. The *Little* Court found that formal notice was a component of subject[-]matter jurisdiction under both the United States and Pennsylvania constitutions, but as noted[,] *Cotton* disavowed the notion as a matter of federal law.

---

[8] *Commonwealth ex rel. Fagan v. Francies*, 53 Pa. Super. 278 (Pa. Super. 1913).

- 11 -

*King*, 234 A.3d at 557 n.9. Thus, as a matter of federal law, Appellant's claim appears to be dead in the water under *Cotton*. However, it remains to be determined if *Little* still applies under Pennsylvania's Constitution.

Of course, none of this is implicated if the factual record demonstrates that Appellant was provided with formal notice. Thus, given the state of the record, and the PCRA court's failure to address this claim in the first instance, the best course of action is to vacate the order denying relief with respect to this claim, and remand to the PCRA court for a hearing. The PCRA court should then provide factual findings with respect to whether the Commonwealth filed a timely criminal complaint and/or information. Even if the court determines that one or both documents were timely filed by the Commonwealth, it should specifically address any court or clerical errors that occurred and correct them accordingly. If the court determines that the Commonwealth failed to properly file a complaint or criminal information, it should then determine if formal notice was provided by some other means analogous to a grand jury indictment, as discussed in *Little*. If the PCRA court determines that Appellant was not provided with formal notice, it should then determine if Appellant is entitled to relief under the Pennsylvania Constitution, despite the ruling in *Cotton*.

## II, III, IV

Appellant's second, third, and fourth claims concern an incident that occurred during his trial, where the trial court learned that "Appellant's twin

sister and another woman[9] may have attempted to intimidate certain jurors." PCO at 6. The trial court "made a full record of the situation, conducted appropriate *voir dire* of the affected jurors[,] and questioned the two alleged intimidators. The [c]ourt denied Appellant's mistrial motion and allowed the trial to proceed. Out of the jury's presence and out of Appellant's presence, the [c]ourt then conducted [a] contempt hearing." *Id.*

In his second issue, Appellant claims that he was denied counsel at a critical stage of the proceedings because his attorney was not present at the contempt hearing. The PCRA court determined that this issue lacks merit because Appellant was not a party to the contempt hearing and, therefore, he had no right to counsel at that proceeding. We agree, and adopt the following analysis by the Commonwealth as our own:

> Defendants are entitled to representation by counsel at critical stages of **their** criminal proceedings. **Commonwealth v. Phillips**, 93 A.3d 847, 854 (Pa. Super. 2015). A contempt hearing, however, is a separate proceeding from a criminal trial. **See Commonwealth v. Walsh**, 36 A.3d 613, 617 n.4 (Pa. Super. 2012) (noting a contempt hearing is a separate proceeding, distinguishable from the underlying criminal matter). Here, after the relevant jurors were questioned regarding their ability to remain impartial at [Appellant]'s trial, the court conducted separate hearings to determine whether to hold in contempt Rasheeda Harris, [Appellant's] twin sister, and Latoia Drayton, another relative[. ]N.T.[,] 1/16/08, [at] 22[]. Those hearings were not part of [Appellant]'s criminal proceeding, nor was he a party to them. Accordingly, his attorney's absence from the contempt hearings did not violate his right to counsel. **Phillips**, *supra*; **Walsh**, *supra*.

_____

[9] Appellant's sister is Rasheeda Harris, and the other woman was determined to be Latoia Drayton. N.T., 1/16/08, at 24-25.

Commonwealth's Brief at 14 (emphasis in original).

Appellant appears to argue that the contempt hearing was a critical stage of **his** criminal proceeding because it ostensibly involved an attempt to intimidate **his** jury. **See** Appellant's Brief at 18. He also argues that the transcripts from the contempt proceedings were captioned with his docket number. **Id.** However, Appellant cites no legal authority supporting his view that he has a constitutional right to counsel at any proceeding that might stem from an event that occurred at his trial, even though he is not a party to such a proceeding.[10] As Appellant's assertions lack any legal support, we find them

_____

[10] Appellant's citation to **Snyder v. Massachusetts**, 291 U.S. 97 (1934), *overruled in part by* **Malloy v. Hogan**, 378 U.S. 1 (1964), is inapposite. Appellant asserts that the **Snyder** Court ruled that "an accused[,] even in situations where the defendant is not actually confronting witnesses or evidence against him has a constitutional right to be present in his own person whenever his presence has a relation reasonably substantial to the fullness of his opportunity to defend against the charge[s.]" Appellant's Brief at 20. In **Snyder**, the trial court granted the prosecution's motion to take the jury to view the crime scene. **Id.** at 103. The attorneys for each codefendant were permitted to attend, however, the trial court denied Snyder's motion to also be present. The **Snyder** Court affirmed that decision and, thus, **Snyder** offers no support for Appellant's position and, perhaps, even weighs against it.

We agree with Appellant that a defendant's right to be present extends to some "situations where the defendant is not actually confronting witnesses or evidence against him, [as] he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." **Commonwealth v. Hunsberger**, 58 A.3d 32, 37 (Pa. 2012) (quoting **Kentucky v. Stincer**, 482 U.S. 730, 745 (1987)). However, Appellant cites no cases which purport to extend this right outside of the criminal case to which a defendant is a party.

unconvincing. Accordingly, we conclude that the PCRA court did not err in dismissing this claim without a hearing.

In his related, third issue, Appellant claims that his trial counsel was ineffective for failing to object to the trial court's holding the contempt hearing outside of Appellant's or his counsel's presence.

> To prevail on a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements, as set forth in **Commonwealth v. Pierce**, 527 A.2d 973, 975–76 (Pa. 1987): (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness.

**Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011) (citation reformatted).

For the same reasons set forth in our discussion of Appellant's second issue, Appellant has failed to demonstrate that this claim has arguable merit, as he did not have a right to counsel at a contempt proceeding to which he was not a party. Similarly, Appellant cannot demonstrate that he was prejudiced by counsel's inaction, because there is no reason to believe that Appellant or his counsel would have been permitted to participate in the contempt proceedings had counsel requested it. Accordingly, we agree with the PCRA court that Appellant is not entitled to relief on this claim.

Next, in Appellant's fourth issue, he asserts that his trial counsel was ineffective for failing to seek a mistrial based on the incident that gave rise to the contempt hearing. He asserts that the jurors were exposed to "extraneous

material and/or influence," which was ostensibly exacerbated by the court's failure to question all jurors about the incident. **See** Appellant's Brief at 23-25. Appellant argues that counsel should have sought a mistrial due to the potential that the jury was biased or intimidated by the event. Appellant specifically focuses his argument on the jurors who were not questioned by the court regarding the matter. **See id.** at 24-26.

We recognize that:

> A defendant has the right to have his or her case heard by a fair, impartial, and unbiased jury and *ex parte* contact between jurors and witnesses is viewed with disfavor. There is, however, no *per se* rule in this Commonwealth requiring a mistrial anytime there is improper or inadvertent contact between a juror and a witness. Whether such contact warrants a mistrial is a matter addressed primarily to the discretion of the trial court. A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to have deprived the moving party of a fair and impartial trial.

**Commonwealth v. Tharp**, 830 A.2d 519, 532–33 (Pa. 2003) (citations omitted).

Here, to prove that trial counsel was ineffective, Appellant must establish that he was prejudiced by counsel's failure to request a mistrial based on the incident, that is, he must demonstrate a reasonable probability that mistrial would have been granted had counsel requested one. Appellant has failed to meet his burden in this regard.

After the trial court was informed about the incident, it questioned several jurors about their contact with Rasheeda Harris and Latoia Drayton on

the previous day. *See* N.T., 1/16/08, at 4-22. Juror 1 testified first, in response to the court's questions, as follows:

Q. At the end of the [c]ourt day yesterday, which was about 4:30, information came to the [c]ourt that there was something that occurred over the luncheon recess in relationship to yourself and some of the other Jurors. Could you tell me what exactly happened, where it happened, and what you saw and observed?

A. The beginning was during lunch recess where I went to pick up my cell phone downstairs. And two of the audience members, they just kind of like brushed [by] me and kind of cut in line in front of 40 people to get their cell phones. Basically [they] cut in front of me. I recognize[d] them right away. I didn't say anything because confrontation is not me….

Q. Did they say or do anything in relationship to you after they cut in front of you in line?

A. No. We made eye contact and I just basically just --

Q. And was it a male or female or both?

A. Two females.

Q. Two females. While they were standing in front of you did they say anything concerning the matter before this [c]ourt?

A. Not directly to me, no.

Q. Well, did they talk to each other about the matter? Anything that you could hear.

A. Right after that, no. Because I recognized them right away so I just basically just ignored them.

*Id.* at 4-5.

The court then asked if the jurors had communicated about the incident. *Id.* at 6. Juror 1 responded that she only spoke to two other jurors about reporting the incident to the court. *Id.* Juror 1 then assured the court that the incident would not affect her ability to be impartial. *Id.* at 6-7.

Next, the court questioned Juror 5, who seemed to recall a different event. He stated that he was walking behind Rasheeda Harris and Latoia Drayton,[11] and overheard them talking. *Id.* at 11. He did not hear what they were saying, and when they recognized him as a juror, they crossed the street. *Id.* at 11-12. Juror 5 testified that he was not frightened or intimidated by the event, and that he could remain impartial. *Id.* at 12. He also told the court that he had not discussed the matter with any other jurors. *Id.* at 13.

The trial court then questioned Juror 11. Juror 11 indicated that the whole jury went to the Reading Terminal after they were dismissed for lunch on the previous day. *Id.* at 14. She then stated: "When we got down to the main floor, about three of us, Juror number 1, with long hair, and I went to go get our cell phones. And some people that were in the Courtroom were making comments behind the Jurors talking about the case, trying to antagonize us." *Id.* at 15. Juror 11 also identified Rasheeda Harris and Latoia Drayton as the people making the comments. *Id.* However, Juror 11 could not describe in any detail what was said, and only told the court:

> [I]t sounded like they were on the cell phone because we walked up to get our cell phones. And they w[ere] basically saying yeah, like we just left, all the Jurors are right in front of us. Something about a murder trial. All of us, that's when all of us decided okay, let's just get out of the building right now.

*Id.* at 15-16.

---

[11] Juror 5 did not identify these women by name. Rather, his description of the women appears to coincide with Juror 1's description. *See id.* at 11. In any event, Appellant has not contested that Rasheeda Harris and Latoia Drayton were the women involved in both incidents.

Juror 11 then told the court that she could remain a fair juror despite the incident. *Id.* at 16. However, when the court asked if she felt intimidated, Juror 11 said that she was "[a] little intimidated." *Id.* The following exchange with the court immediately followed:

> Q. Okay. Well, let me ask you this. And I want, as the lawyers do, we want to know how you feel about it. I don't know who these people are. Courtrooms are open, I don't ask people when they come in, you know, are you part of the defendant's family, the victim's family, you know. Courtrooms are open. There are people who like to go to courtrooms. The fact that you heard this from someone who was, who you had observed in the Courtroom earlier, would you hold it against either the Commonwealth or the defense because of that?
>
> A. No, ma'am. I am just scared of when I leave the building if they like try to make me as a marksman.
>
> Q. If the [c]ourt arranged for the Sheriffs to escort the Jury out of the building, or if I find out -- and I am going to do some further investigation -- if I make sure that those individuals are not permitted back into the Courthouse, would that make you feel more secure?
>
> A. Yes, ma'am.

*Id.* at 16-17. When questioned by the prosecutor, Juror 11 indicated that she had discussed this incident with two other Jurors, Jurors 1 and 12, and had a brief interaction with Juror 5 while she was talking to the other two.[12]

_____

[12] Juror 11 stated, "And another Juror walked in, a black Juror [later identified as Juror 5]. And he heard us talking and he said oh, yeah, there was a fellow behind us, behind him when he left. Because he was at the end of the group. And he said[,] well, I am not worried about him because he just turned off and walked away." *Id.* at 18. To the extent that Appellant now claims that Juror 5 was not the man about whom Juror 11 was referring, we find that assertion is not supported by the record.

Finally, the court questioned Juror 12. Juror 12 indicated that although he had engaged in a conversation with Jurors 1 and 11, he "didn't see or observe anything." *Id.* at 20. He then stated that he could remain impartial when asked by the court. *Id.*

We note that trial court advised each of the jurors that they were not to discuss the matter any further with anyone. We also note that both Rasheeda Harris and Latoia Drayton testified. *See id.* at 24-26 (Harris); 27-31 (Drayton); 32-34 (Harris). They essentially denied that they had intimidated the jurors, although they admitted being near them at lunch the previous day. Rasheeda Harris claimed that the only thing she said on the phone about the case was that she told her mother (also Appellant's mother), that "everything looks like it is going to turn out fine for your son." *Id.* at 26.

Following the above testimony, the trial court stated: "I will say for the record that it is pretty clear to the [c]ourt that the intention of the two women was to try to intimidate the Jury. But I don't believe that they have crossed the line." *Id.* at 36-37. The trial court then directed the Sherriff's Officer to escort the jury from the courtroom in the future, and barred Harris, Drayton, and the rest of Appellant's family from returning to the courtroom. *Id.* at 39. Appellant's counsel subsequently declined to move for a mistrial. *Id.* at 40. However, he told the judge that he was not opposed to removing certain jurors at the court's discretion. *Id.*

Instantly, Appellant argues that he was prejudiced because the court failed to question the entire jury about the incident, ostensibly providing an

- 20 -

arguable basis for his counsel to seek a mistrial on his behalf. Appellant's Brief at 24-25. He points to Juror 11's testimony, suggesting it indicated that the incident with Harris and Drayton occurred before the whole jury:

> [T]he trial court questioned [Juror 11], as to "who was in the group[,]" [and she] responded[,] "the whole jury." Equally important, [Juror 11] stated that when they got down to the main floor, about three jurors, [J]uror … 1, herself[,] went to get the[ir] cell phones, and that two female[s] that were in the courtroom were making comments talking about the case/trial, behind the "***jurors***[,"] trying to antagonize them. [Juror 11] further stated that these two females were on a cell phone telling someone that they just left, and "***all the jurors***[,"] are right in front of them, [and] something about a murder trial[, and] that's when ***all the jurors*** decided[,] okay[,] let[']s just get out of the building right now.

*Id.* at 25 (emphasis in original). Appellant contends, based on Juror 11's testimony, that other jurors must have been exposed to the incident, and that he was potentially prejudiced by the fact that some of the other jurors may have been affected by it, but were never questioned by the court.

We disagree. Our Supreme Court has held that:

> Once the existence of a potentially prejudicial extraneous influence has been established by competent testimony, the trial judge must assess the prejudicial effect of such influence. Because a trial judge is precluded from considering evidence concerning the subjective impact of an extraneous influence on any juror, it has been widely recognized that the test for determining the prejudicial effect of an extraneous influence is an objective one. In order to determine whether an extraneous influence is prejudicial, a trial judge must determine how an objective, typical juror would be affected by such an influence.

***Carter by Carter v. U.S. Steel Corp.***, 604 A.2d 1010, 1016 (Pa. 1992).

Here, the trial court indicated that, while it believed Harris and Drayton may have attempted to intimidate the jurors, they never "crossed the line." N.T., 1/16/08, at 36-37. We understand that to mean that the conduct of Harris and Drayton did not amount to intimidation of the jurors, regardless of their intent. That is, the court found that the extraneous influence at issue was not prejudicial, and we ascertain no abuse of discretion in that conclusion. Indeed, there is nothing "intimidating" about what either Harris or Drayton said, as conveyed through the jurors' testimony. The jurors were not threatened, and they were not exposed to information pertaining to the trial. At worst, they were subject to some degree of rudeness when Harris and Drayton cut in front of the jurors on their way to retrieve Harris' cellphone. This is not the sort of intimidation or outside influence on jurors that warrants a new trial, even if all the jurors were exposed to it.[13] Thus, there was no legal basis upon which trial counsel could have sought a mistrial.

We are further unconvinced by Appellant's citations to **Commonwealth v. Russel**, 665 A.2d 1239 (Pa. Super. 1995), **Commonwealth v. Gibson**, 688 A.2d 1152 (Pa. 1997), and **Parker v. Gladden**, 385 U.S. 363 (1966), as we find each of those cases distinguishable from the instant matter. First, in **Russel**, this Court considered a claim that a new trial was warranted because a juror indicated that "she had been confronted outside of court and was told

_____

[13] Furthermore, we do not find the statement, "all the Jurors are right in front of us," to be either a literal or figurative threat, nor did it convey any information about any matter relevant to the trial. **Id.** at 15.

'well, I hope you make the right decision for your own good.'" ***Russel***, 665 A.2d at 1245. Subsequently,

> all attorneys were notified[,] and the juror was questioned. Two other jurors, in whom the affected juror had confided, were also questioned. The trial court then questioned the remaining jury members in an attempt to illicit whether any incident involving a fellow jury member had affected his or her ability to render a fair and just verdict.
>
> The record indicates that the threatened juror and the two jurors in whom she had confided were extensively questioned and then dismissed from the case. Their testimony indicated that the remaining jury members had not been tainted.
>
> The questioning of the rest of the jury was limited to broad questions that would not reveal the incident involving their fellow juror. This questioning amply demonstrated both the jury's ability to be fair and impartial, and that no "fixed bias was planted in the mind of any juror to require a mistrial." ***Commonwealth v. Lee***, 395 A.2d 935, 937 (Pa. Super. 1978).

***Id.*** (citation reformatted).

Appellant contends that, as in ***Russel***, each of the jurors should have been questioned. However, the statement at issue in ***Russel*** was far more egregious, as it involved an implicit threat made directly to a juror by a third-party. Furthermore, only three jurors were questioned about the incident: the threatened juror, and the two jurors in whom she had confided about the incident. The rest of the jury was not questioned about the incident, but instead questioned as to whether they would be affected by the removal of those three jurors. There was no indication that the jurors were questioned about whether they had heard similar threats. We conclude, therefore, that ***Russel*** does not support Appellant's argument that he may have been

prejudiced by the failure to question the other jurors in this case. It is wholly speculative to assume that the unquestioned jurors were affected by the incident, when the incident was not intimidating and did not expose the jurors to information about the trial.

In *Gibson*, the appellant claimed that "the trial court erred in refusing to dismiss the entire jury venire after learning that one member of the venire had stated, within the hearing of other potential jurors, that he knew one of the victims and that drugs were involved in the crime." *Gibson*, 688 A.2d at 1159. Like Appellant in the instant case, Gibson asserted that "the court failed to conduct a full inquiry into whether the panel was tainted, as only one juror was excused for cause as a result of hearing the statements." *Id.* The *Gibson* Court found that the trial court did not err in failing to dismiss the entire venire because it had interviewed the six potential jurors who had been in the vicinity of the remarks, and then dismissed both potential jurors who had heard them, as well as the speaker. The Court further held that Gibson had "failed to demonstrate that any of the jurors who actually heard his case had been exposed to the comments in question." *Id.* at 1160.

*Gibson* is distinguishable because it involved an obviously prejudicial statement about matters concerning Gibson's case. Here, Appellant has failed to meet the threshold question of whether the at-issue incident involved a potentially prejudicial extraneous influence at all. Thus, *Gibson* does not afford Appellant any relief.

In *Parker*,

- 24 -

a court bailiff assigned to shepherd the sequestered jury, which sat for eight days, stated to one of the jurors in the presence of others, while the jury was out walking on a public sidewalk: [“]Oh that wicked fellow (petitioner), he is guilty[”]; and on another occasion said to another juror under similar circumstances, [“]If there is anything wrong (in finding petitioner guilty) the Supreme Court will correct it.[”]  Both statements were overheard by at least one regular juror or an alternate.  The trial court found [“]that the unauthorized communication was prejudicial and that such conduct materially affected the rights of the (petitioner).[”]  The Supreme Court of Oregon reversed, finding that [“]the bailiff's misconduct did not deprive (petitioner) of a constitutionally correct trial.[”]

*Parker*, 385 U.S. at 363–64 (footnotes omitted).  The *Parker* Court reversed, holding:

As we said in *Turner v. State of Louisiana*, [379 U.S. 466, 473 (1965)], [“]it would be blinking reality not to recognize the extreme prejudice inherent[”] in such statements that reached at least three members of the jury and one alternate member. … The State says that 10 of the jurors testified that they had not heard the statements of the bailiff.  This, however, ignores the testimony that one of the statements was made to an unidentified juror, which, including Mrs. Inwards and Mrs. Drake, makes three.  In any event, petitioner was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors.

*Id.* at 365–66.

As in the previous two cases, *Parker* involved an inherently prejudicial statement, and we simply reject Appellant's contention that brushing by the jurors or making mundane statements about being in front of the jury on a cellphone constitute conduct comparable to any of the extraneous influences discussed in *Russel*, *Gibson*, and *Parker*.  As such, we conclude that Appellant could not have been prejudiced by these events, even if he were able to establish that some jurors not questioned by the trial court had

witnessed them. Thus, the trial court should not have granted a mistrial if one had been requested and, consequently, Appellant's trial counsel cannot be deemed infective for failing to raise a meritless motion. Accordingly, we ascertain no error in the PCRA court's dismissal of this claim without a hearing.

## V, VI, VII

Appellant's next series of claims concern his failure to file an appeal from the *nolle prosequi* order issued by the trial court. In his fifth claim, Appellant asserts that his trial counsel was ineffective for never consulting with him regarding his right to file an appeal from the *nolle prosequi* order. In his sixth claim, he asserts that trial court failed to advise him of his right to appeal from that order. In his seventh claim, Appellant contends that his trial counsel was ineffective for failing to file a direct appeal from that order, despite being told to do so by Appellant. He further asserts that the PCRA court erred by failing to hold an evidentiary hearing on these issues. Unfortunately, the PCRA court did not address any of these issues in its Rule 1925(a) opinion.

We recognize that:

A *nolle prosequi* is a voluntary withdrawal by a prosecuting attorney of proceedings on a particular criminal bill or information, which at any[ ]time in the future can be lifted upon appropriate motion in order to permit a revival of the original criminal bill or information. Since a *nolle prosequi* acts neither as an acquittal nor a conviction, double jeopardy does not attach to the original criminal bill or information.

**Commonwealth v. Ahearn**, 670 A.2d 133, 135 (Pa. 1996) (citation omitted).

Furthermore,

we note an order granting the Commonwealth's motion for *nolle prosequi* of pending charges is generally interlocutory. Nevertheless, such an order is immediately appealable under the combined authority of Pa.R.Crim.P. 585 (providing, "Upon motion of the attorney for the Commonwealth, the court may, in open court, order a *nolle prosequi* of one or more charges notwithstanding the objection of any person"); Pa.R.A.P. 311(a)(8) (stating, "An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:...(8) Other Cases. An order which is made appealable by statute or general rule."); and ***Commonwealth v. Reinhart***, 353 A.2d 848 (Pa. 1976) (holding order granting Commonwealth's motion for *nolle prosequi* over defendant's objection is immediately appealable).

This present case involves the interpretation and application of Rule 585 which provides in pertinent part:

> Rule 585. ***Nolle Prosequi***
>
> (A) Upon motion of the attorney for the Commonwealth, the court may, in open court, order a *nolle prosequi* of one or more charges notwithstanding the objection of any person.

Pa.R.Crim.P. 585(A). Our Supreme Court has stated:

> [T]here are two factors to be considered when a request for a *nolle prosequi* is made: (1) is the reason given by the Commonwealth for requesting the *nolle prosequi* valid and reasonable, **and** (2) does the defendant, at the time the *nolle prosequi* is requested, have a valid speedy trial claim?

***Reinhart***, 353 A.2d at 853 (emphasis added). Moreover, when a court considers a motion for *nolle prosequi*, it should afford both parties an opportunity to "argue the merits" of the motion. ***Id.*** at 851-52.

***Commonwealth v. Rega***, 856 A.2d 1242, 1245 (Pa. Super. 2004) (footnotes

omitted; citations reformatted).

In the case *sub judice*, the PCRA court explained:

The case proceeded to jury selection on April 16, 2007. Before the jury was sworn, however, the Commonwealth sought a bench warrant for Mr. Davis (a critical eyewitness), who failed to appear for trial. The court issued the bench warrant and granted the

Commonwealth a brief recess to find the missing witness. Nevertheless, the police were unable to locate Mr. Davis. As a result, the Commonwealth asked the court to enter *nolle prosequi* on the charges without prejudice to re-file the criminal complaint once the Commonwealth secured Mr. Davis as a witness.

The court granted the Commonwealth's request on April 23, 2007. Shortly thereafter, the Commonwealth secured Mr. Davis and asked the court to remove the *nolle prosequi*; the court granted the Commonwealth's request on May 15, 2007. The Commonwealth immediately reinstated the identical charges against Appellant, and the court relisted the case for trial at the earliest possible date consistent with the court's calendar.

PCO at 2-3.

Turning to Appellant's fifth claim, he asserts that his trial counsel was ineffective for failing to advise him regarding his right to appeal from the *nolle prosequi* entered on April 23, 2007, citing **Commonwealth v. Carter**, 21 A.3d 680 (Pa. Super. 2011), in support of his claim. In **Carter**, the appellant "neither filed post-sentence motions nor a direct appeal to this Court." **Id.** at 682. Carter filed a timely PCRA petition, arguing that "he was entitled to the reinstatement of his appellate rights pursuant to the United States Supreme Court's decision in **Roe v. Flores–Ortega**, 528 U.S. 470 … (2000), because trial counsel allegedly failed to consult with him about filing a direct appeal." **Id.** The PCRA court in **Carter** denied Carter's claim without a hearing. This Court reversed and remanded for a hearing, recognizing prior precedent that:

Counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. …

> A deficient failure on the part of counsel to consult with the defendant does not automatically entitle the defendant to reinstatement of his or her appellate rights; the defendant must show prejudice.

***Carter***, 21 A.3d at 683 (cleaned up). Thus, to be entitled to relief for his fifth claim, Appellant must demonstrate that he was prejudiced due to his counsel's failure to consult with him regarding a potential appeal from the *nolle prosequi* order.

Appellant presents little argument in his brief concerning how he was prejudiced by counsel's failure to advise him of his right to appeal from the *nolle prosequi* order. The alternative to granting the *nolle prosequi*, given the Commonwealth's temporary loss of a key witness, and the impending Pa.R.Crim.P. 600 deadline, was dismissal of the charges. However, "[d]ismissal of charges is an 'extreme sanction' that should be imposed sparingly and only in cases of blatant prosecutorial misconduct." ***Commonwealth v. Goldman***, 70 A.3d 874, 881 (Pa. Super. 2013).

> Moreover,
>
> [t]he grant of a petition for *nolle prosequi*, "lies within the sound discretion of the [trial c]ourt, and its action will not be reversed in the absence of an abuse of discretion." ***Commonwealth v. Stivala***, 645 A.2d 257, 261 (Pa. Super. 1994)….
>
>> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration.
>
> ***Commonwealth v. Krick***, 67 A.2d 746, 749 (Pa. Super. 1949).

***Rega***, 856 A.2d at 1244 (citations reformatted). An "abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication

- 29 -

of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Antidormi***, 84 A.3d 736, 749 (Pa. Super. 2014) (citation omitted).

Instantly, we ascertain no prejudice resulting from counsel's alleged failure to consult, because we conclude Appellant has failed to meet his burden to prove that an appellate challenge to the entry of the *nolle prosequi* would have been successful. In ***Rega***, the trial court entered a *nolle prosequi* on Rega's charges, and he immediately appealed. This Court vacated the order granting the *nolle prosequi* for multiple reasons, and remanded for reconsideration by the trial court. First, the ***Rega*** Court determined that the Commonwealth had not proffered a justification for the *nolle prosequi*, and the trial court was not permitted to "intuit or infer one to justify the court's action." ***Rega***, 856 A.2d at 1245. Second, we found that the Rule 600 deadline to try Rega had already elapsed when the *nolle prosequi* was entered. ***Id.*** at 1247. Thus, by entering the *nolle prosequi*, Rega was "effectively precluded … from asserting his speedy trial claims." ***Id.*** Finally, we determined that the *nolle prosequi* had been entered without notice to the defendant, and had not been argued in open court, and that Rega "should have been given an opportunity to contest the merits of the motion and present his speedy trial claims." ***Id.***

Here, Appellant asserts that the *nolle prosequi* order was filed "five days" before the Rule 600 deadline.[14]  Appellant's Brief at 40.    However, even if true, that fact establishes that Appellant did not have a Rule 600 claim at the time the *nolle prosequi* was entered, because the Rule 600 deadline had not yet elapsed.  Furthermore, the prosecutor had a valid and reasonable basis to request the *nolle prosequi*, as the Commonwealth's key witness failed to appear for Appellant's pending trial, and a bench warrant was issued for the witness.  Under these circumstances, Appellant cannot demonstrate that he was prejudiced by trial counsel's failure to advise him of his right to file an interlocutory appeal challenging the entry of a *nolle prosequi*, as he has failed to establish that such an appeal had any chance to succeed.  Therefore, Appellant is not entitled to relief on this claim.

Next, Appellant contends the trial court erred by not advising him of his right to appeal from the *nolle prosequi*, and that he would have appealed had he been so advised.  Citing **Commonwealth v. Liptak**, 573 A.2d 559 (Pa. Super. 1990), *rev'd on other grounds*, **Com., Dept. of Transp., Bureau of Driver Licensing v. Tarnopolski**, 626 A.2d 138, 139 (Pa. 1993), Appellant argues that this constituted a breakdown in the court's operation.

In **Liptak**, the defendant sought to appeal *nunc pro tunc* from his guilty plea before a magistrate for violations of the Motor Vehicle Code.  He argued that the police officer who issued the citation had misrepresented that "no

---

[14] We assume for the limited purpose of our analysis here that Appellant's Rule 600 calculation is accurate.

further suspensions would be imposed on his driving privileges were he to simply plead guilty," which he argued constituted fraud or a negligent act by a court official, as the guilty plea ultimately resulted in the suspension of his driver's license. *Liptak*, 573 A.2d at 559. The *Liptak* Court rule concluded that the officer's comment did not constitute fraud or negligence by a court official, noting that

> a police officer is not responsible for the administration of the judicial system. Clearly, a district justice, or a member of his or her staff, is a "court official" whose fraudulent, wrongful or negligent conduct causing injury to a party would, unquestionably, implicate the integrity of the judicial system. In such a situation, there would be little hesitation to conclude that a breakdown in the court's operation had occurred. However, we deem it ill-advised to consider police officers as among those who would be considered a "court official."

*Id.* at 561. The *Liptak* Court further determined that, even had Liptak been subjected to a fraud by a court official, he was still not entitled to relief because he failed to act promptly once he discovered the fraud. *Id.* at 562. Appellant fails to explain how *Liptak* applies to the instant matter, and it is not obvious to us that the reasoning of that decision supports his claim. Accordingly, we conclude that no relief is due under *Liptak*. As Appellant fails to present any other argument in support of this claim, we conclude that it lacks merit.

In his seventh issue, Appellant asserts that he directed his trial counsel to file an appeal from the order granting *nolle prosequi*, and that counsel failed to do so. Appellant alleges that his attorney's failure constituted ineffective assistance of counsel.

Our Supreme Court has held that:

> [W]here there is an unjustified failure to file a requested direct appeal, the conduct of counsel falls beneath the range of competence demanded of attorneys in criminal cases, denies the accused the assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, as well as the right to direct appeal under Article V, Section 9, and constitutes prejudice for purposes of Section 9543(a)(2)(ii). ***Therefore, in such circumstances, and where the remaining requirements of the PCRA are satisfied, the petitioner is not required to establish his innocence or demonstrate the merits of the issue or issues which would have been raised on appeal.***

***Commonwealth v. Lantzy***, 736 A.2d 564, 572 (Pa. 1999) (emphasis added).

Thus, in order to demonstrate that he is entitled to relief for this claim, Appellant does not have to establish that he was prejudiced by counsel's failure to file the requested appeal.

Instantly, the record is devoid of evidence as to whether Appellant requested an appeal from the entry of *nolle prosequi*. The Commonwealth asserts that Appellant

> did not timely request that appeal. He asserted below that he did not ask counsel to file an interlocutory appeal until October 10, 2007 (Amended PCRA Petition, 5/20/16, [at] 36). The thirty-day period for filing an appeal from that May 15, 2007 Order – June 14, 2007 – had long passed. ***See*** Pa.R.A.P. 903(a) (general rule providing for thirty-day time limit for filing a notice of appeal). There was no arguable merit to the instant claim because, at the time [Appellant] claims he requested an appeal, that appeal would have been untimely.

Commonwealth's Brief at 24. In his reply brief, Appellant argues that he did, in fact, assert in his amended PCRA petition that he asked trial counsel to file an appeal within the thirty-day period, and that he continued to request that appeal throughout the summer of 2007. ***See*** Appellant's Reply Brief at 9.

Our review of the record cannot resolve this factual dispute, and the PCRA court did not make any factual findings on this point. The Commonwealth focuses on Appellant's assertion, in his amended PCRA petition, that he sent a certified letter to his trial counsel, on October 10, 2007, requesting an appeal from the *nolle prosequi*. **See** Amended PCRA Petition, 5/20/16, at 36. However, the Commonwealth ignores Appellant's prior assertions in the petition. According to Appellant, he received a letter from his trial counsel on May 20, 2007, and then called counsel to discuss it. **Id.** It was at that time that counsel orally informed Appellant that the case had been *nolle prossed*. **Id.** After researching the issue on his own, and discovering that the *nolle prosequi* was immediately appealable, Appellant claims he called his attorney and requested that he file an appeal, and that he repeated this oral request "throughout the summer of 2007[.]" **Id.**

While Appellant did not specify the date on which he first orally requested the appeal, his claim that he requested it before the June 14, 2007 deadline is not inconsistent with his factual assertion that he repeatedly requested the appeal during the summer of 2007, **after** his initial request was not honored by his trial counsel. Accordingly, we reject the Commonwealth's contention that this matter can be resolved on the face of the petition and the averments contained therein. Whether Appellant requested the appeal before June 14, 2007, if at all, is a factual matter that should have been resolved at an evidentiary hearing. Accordingly, we vacate the order granting relief in

part, and remand for an evidentiary hearing to determine if, and/or when, Appellant requested an appeal from the *nolle prosequi*.

## VIII

Next, Appellant asserts that his counsel was ineffective for failing to object to his trial on double-jeopardy grounds. He asserts that double jeopardy attached when "jury selection was complete[d] … on April 23, 2007[,]" when the prosecutor requested the *nolle prosequi*. Appellant's Brief at 40.

> The Double Jeopardy Clause "protects against a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction and multiple punishments for the same offense." ***Commonwealth v. McCord***, 700 A.2d 938, 941 (Pa. Super. 1997). However, the constitutional prohibition against double jeopardy does not apply unless jeopardy attaches. ***See Commonwealth v. Ortega***, 995 A.2d 879, 887 (Pa. Super. 2010). In Pennsylvania, jeopardy attaches when a defendant stands before a tribunal where guilt or innocence will be determined. ***Id.*** In a criminal jury trial, this occurs when the jury is sworn. ***Id.***

***Commonwealth v. Young***, 35 A.3d 54, 59 (Pa. Super. 2011).

The Commonwealth argues:

> A jury must be both empaneled and sworn in order for jeopardy to attach. ***See Commonwealth v. Bronson***, 393 A.3d 453, 454 (Pa. 1978) ("It is well-settled that in order for jeopardy to attach, the jury must be empaneled and sworn."); ***Commonwealth v. Hallman***, 67 A.3d 1256, 1261 (Pa. Super. 2013) ("In a criminal jury trial, jeopardy attaches when the jury is sworn."); []***Young***, 35 A.3d [at] 59 … (same). Here, the order granting a *nolle prosequi* was issued before the jury was sworn ([Trial Court] Opinion, … 12/22/09, [at] 3) ("Prior to swearing the jury, the [c]ourt, on April 23, 2007, granted the Commonwealth's motion to *nolle pros* without prejudice...") (emphasis added).

Commonwealth's Brief at 25.

We agree with the Commonwealth that Appellant's double-jeopardy claim is meritless, as the record demonstrates that the original jury, although empaneled, had yet to be sworn when the *nolle prosequi* was entered. Thus, counsel was not ineffective for failing to object to his trial on double-jeopardy grounds, as "[i]t is well-settled that counsel may not be deemed ineffective for failing to raise a meritless claim." ***Commonwealth v. Tarver***, 420 A.2d 438, 438 (Pa. 1980).

In his reply brief, Appellant, for the first time, raises the novel claim that since the jury selection process was complete, the jury must have been sworn in pursuant to Pa.R.Crim.P. 640(A), which provides that: "After all jurors have been selected, the jury, including any alternates, shall be sworn as a body to hear the cause." ***See*** Appellant's Reply Brief at 11. As this particular argument was not raised previously by Appellant, it would normally be subjected to our waiver doctrine. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"); and ***see Commonwealth v. Otero***, 860 A.2d 1052, 1054 (Pa. Super. 2004) ("Issues presented before this court for the first time in a reply brief are waived. ***See*** Pa.R.A.P. 2113 (scope of the reply brief is limited to matters raised by [the] appellee and not previously addressed in [the] appellant's brief).").

However, some double-jeopardy claims are clearly not subject to waiver, as they implicate the legality of sentence. As our Supreme Court has

explained, "the double jeopardy prohibition against multiple punishment for the same offense serves to prevent the sentencing court from prescribing greater punishment than the legislature intended. As a result, such challenges have been treated as implicating the legality of the sentence." *Commonwealth v. Andrews*, 768 A.2d 309, 313 (Pa. 2001) (citations and quotation marks omitted). Here, Appellant's claim does not challenge the imposition of multiple punishments for the same offense. Instead, it implicates another aspect of double-jeopardy protection under the state and federal constitutions,[15] that which pertains to the "prohibition against successive trials." *Burks v. U.S.*, 437 U.S. 1, 11 (1978). The Double Jeopardy Clause "does not allow the State to make repeated attempts to convict an individual for an alleged offense, since the constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Id.* (cleaned up). Arguably, because Appellant's claim implicates the ban on successive trials, and not the imposition of multiple punishments for the same offense, his claim is subject to waiver because it does not implicate the legality of his sentence. Nevertheless, out of an abundance of caution, we will address Appellant's newly-raised, novel double-

_____

[15] "The double jeopardy clauses of the United States and Pennsylvania Constitutions are nearly identical in language and co-extensive in scope." *Commonwealth v. McMullen*, 745 A.2d 683, 686 (Pa. Super. 2000) (footnotes omitted).

jeopardy claim, as we are unable to uncover any caselaw making such a distinction for waiver purposes.

Appellant's argument hinges on the notion that Rule 640(A)'s language is "mandatory," Appellant's Reply Brief at 11, as it states that the jury "**shall be sworn**" after all jurors have been selected. Pa.R.Crim.P. 640(A) (emphasis added). Appellant provides no caselaw in support of this argument and, thus, relies solely on his interpretation of the text of the rule. In essence, he contends that, because the jury was empaneled, his double-jeopardy protections attached because Rule 640(A) dictates that an empaneled jury must be sworn.

However, it is beyond dispute that the jury was not actually sworn, regardless of Rule 640(A). As to Appellant's contention that Rule 640(A) dictates that a jury must be immediately sworn after it is selected, this Court rejected a similar argument in *Commonwealth v. Darush*, 420 A.2d 1071, 1077 (Pa. Super. 1980), *vacated on other grounds*, 459 A.2d 727 (Pa. 1983). In *Darush*, the defendant argued that the trial court erred when it failed to "swear the jury immediately after it was chosen." *Id.* at 1077. Examining the prior version of Rule 640(A), which contained identical language to the present version, the *Darush* Court rejected that argument, stating that the defendant,

> directs us to no authority, and our research has disclosed none, requiring the jury to be sworn immediately after it is chosen.[5] "In the absence of statute, the time for swearing jurors in chief after they have been examined and opportunity given for challenge is within the discretion of the court." 50 C.J.S. Juries s 294b.

[5] Pa.R.Crim.P. 1110 provides:

> (a) After all jurors have been selected, the jury, including any alternates, shall be sworn as a body to hear the cause.

*Id.*

Thus, the **Darush** Court rejected the notion that the language of the at-issue rule dictates that the jury must be immediately sworn after it is selected, as the timing of the swearing-in of the jury after selection is left to the court's discretion. Accordingly, even assuming Appellant's newly-raised double jeopardy claim was not waived, we conclude that it is meritless.

## IX

In his ninth claim, Appellant contends that he was not awarded the appropriate amount of time-credit at sentencing for the time he spent in pre-trial incarceration. The PCRA court determined that this issue was not properly before the court in a PCRA petition, citing this Court's decision in **Commonwealth v. Heredia**, 97 A.3d 392 (Pa. Super. 2014), and on that basis refused to address the claim. **See** PCO at 7-8.

**Heredia**, however, is not analogous to the instant matter. In that case, the issue was whether the Department of Corrections had awarded the appropriate amount of time served in pre-trial incarceration, where the sentencing order "expressly and unambiguously granted him 'credit for any time served.'" **Heredia**, 97 A.3d at 395. However,

> [a]n appellant's challenge to the trial court's failure to award credit for time spent in custody prior to sentencing involves the legality of sentence. **Commonwealth v. Hollawell**, 604 A.2d 723, 725 (Pa. Super. 1992). Issues concerning the legality of sentence are

cognizable under the PCRA. ***Commonwealth v. Hockenberry***, 689 A.2d 283, 288 (Pa. Super. 1997).

***Commonwealth v. Beck***, 848 A.2d 987, 989 (Pa. Super. 2004) (citations reformatted).

Here, the Commonwealth concedes that a time-credit claim addressing the trial court's imposition of sentence is a legality-of-sentencing claim that is cognizable under the PCRA, and further states that it is unable "to assess on the existing record the merits of the claim [Appellant] may be asserting. He may have received credit for the time he served in prison prior to trial. The matter [was] not addressed at sentencing. Additionally, the sentencing order does not appear … in the certified record." Commonwealth's Brief at 26. Furthermore,

> the Commonwealth does not oppose a limited remand for the purpose of allowing the trial court to issue a new sentencing order to clarify whether [Appellant] received time credit for any applicable time periods in this case, and, more importantly, whether the sentence in the instant case was imposed concurrent with, or consecutive to, the sentence for [Appellant]'s firearms convictions in his other case.

***Id.*** at 27.

As the PCRA court erred in determining that Appellant's time-credit claim was not cognizable under the PCRA, and because we agree with Commonwealth that the state of the record does not permit us to address the claim at this time, we vacate the order denying relief in part, and remand for further proceedings to address this claim.

## **X**

Next, Appellant asserts that his counsel was ineffective for failing to seek suppression of the statements he made to Coleman. Appellant asserts that Coleman,

was acting under instructions as a paid informant for the federal government[, and Appellant] was unaware that his old … friend was in fact a federal informant. Finally, [Appellant] was in custody and under indictment at the time of the conversation, [and trial c]ounsel knew this and did not move to suppress or object to these statements.

Appellant's Brief at 43. To support this claim, Appellant cites *U.S. v. Henry*, 447 U.S. 264 (1980).

In *Henry*, a witness, Nichols, testified that while he and Henry were incarcerated together, "Henry described to him the details of the robbery and stated that the only evidence connecting him to the robbery was [a] rental receipt[; however, t]he jury was not informed that Nichols was a paid Government informant." *Id.* at 267. Indeed,

[t]he Court of Appeals viewed the record as showing that Nichols deliberately used his position to secure incriminating information from Henry when counsel was not present and held that conduct attributable to the Government. Nichols had been a paid Government informant for more than a year; moreover, the FBI agent was aware that Nichols had access to Henry and would be able to engage him in conversations without arousing Henry's suspicion. The arrangement between Nichols and the agent was on a contingent-fee basis; Nichols was to be paid only if he produced useful information.

*Id.* at 270 (footnote omitted).

The Supreme Court held that:

Under the strictures of the Court's holdings on the exclusion of evidence, we conclude that the Court of Appeals did not err in

- 41 -

holding that Henry's statements to Nichols should not have been admitted at trial. By ***intentionally creating a situation likely to induce Henry to make incriminating statements*** without the assistance of counsel, the Government violated Henry's Sixth Amendment right to counsel.

***Id.*** at 274 (emphasis added).

Later, in ***Commonwealth v. Hawkins***, 701 A.2d 492 (Pa. 1997), our Supreme Court clarified the standard for assessing the suppressibility of statements to jailhouse informants as follows:

> Information secured by an informant acting as an agent of the government must be suppressed where the informant acts under instructions as an informant for the government, where he presents himself as no more than a fellow inmate rather than a governmental agent, and where the suspect is in custody and under indictment at the time of the questioning by the informant because such questioning outside the presence of the accused's counsel violates the accused's Sixth Amendment right to counsel. In order to prove such a violation, the defendant must demonstrate that the police and the informant took some action, beyond mere listening, which was designed deliberately to elicit incriminating remarks. Moreover, the defendant must show that the informant was acting as an agent of the government. Individual acts do not become imbued with the character of governmental action merely because they are later relied upon and used by the government in furtherance of governmental objectives.

***Hawkins***, 701 A.2d at 505 (citations omitted).

Appellant is not entitled to relief under ***Henry***. Here, the PCRA court determined that "Coleman's testimony was that Appellant approached him, struck up a conversation[,] and volunteered his confession." PCO at 7. Relying on ***Hawkins***, the PCRA court concluded that because Appellant provided nothing to contradict that account in his petition, he could not demonstrate counsel's ineffectiveness for failing to seek to suppress

Coleman's statement, as there is no evidence that Coleman made any effort to solicit Appellant's inculpatory remarks. *Id.* We also note that, in his brief, Appellant fails to articulate what evidence he intended to present at an evidentiary hearing that would show, or tend to show, that his statements were deliberately elicited by Coleman in violation of his 6th Amendment right to counsel, even if we assume Coleman was acting as a *de facto* government agent. Accordingly, we ascertain no error in the PCRA court's denial of this claim without a hearing.[16]

## **XI**

Next, Appellant claims that he was denied his right to counsel at a motions hearing held on January 14, 2008. He asserts that he presented various arguments to the trial court at that hearing, and counsel "did not say anything" and, instead, "allowed [Appellant] to argue against [the prosecutor, but] counsel did not object …[or] inform the court that [Appellant] could not act as counsel." Appellant's Brief at 44-45. Appellant argues that counsel did not subject the prosecution to meaningful adversarial testing at this stage of the proceedings.

---

[16] Moreover, it is clear from the record that Coleman's cooperation with the prosecution in this case was secured through a plea agreement with the federal authorities on an unrelated matter, which was admitted into evidence. *See* N.T., 1/16/08, at 93-94. Appellant's counsel extensively cross-examined Coleman over the nature of his deal with the government in relation to this case. *Id.* at 108-43. Thus, the jury was aware of the circumstances of Coleman's cooperation with the government when he testified.

The Commonwealth complains that Appellant failed to develop this claim and failed to cite to the relevant notes of testimony in his brief. Appellant asserts in his reply brief that he referred to the relevant transcripts in his PCRA petition, and provides those citations. However, he also fails to develop this claim beyond making the bald assertion that counsel failed to subject the Commonwealth's case to meaningful adversarial testing. Notably, Appellant fails to explain what, specifically, counsel should have done and why.

Because this claim remains undeveloped, we agree with the Commonwealth that it is, therefore, waived. We have reviewed the pages cited by Appellant in his reply brief, and we fail to observe how the referenced portions of the January 14, 2008 hearing are relevant to his claim that he was denied his right to counsel at that hearing. Appellant cites to pages 3, 6, 8, 10, and 13 of that transcript, but fails to describe or explain what occurred on those pages, and/or how counsel's representation was deficient or entirely absent based upon that portion of the record. Our review of the record shows that these pages cover the trial court's opening remarks to potential jurors, *see* N.T., 1/14/08, at 3-7, an introduction of the parties, *id.* at 7, as well the first few *voir dire* questions, *id.* at 8-13. Yet, nothing in Appellant's argument in his eleventh issue concerns *voir dire* at all. Accordingly, we deem this issue waived for lack of development. ***See Commonwealth v. Walter***, 966 A.2d 560, 566 (Pa. 2009) (stating that when an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived).

<u>**XII**</u>

Next, Appellant asserts that the "trial court[,] the Superior Court[, and] the Commonwealth obstructed [Appellant] [on] direct appeal." Appellant's Brief at 47. However, most of Appellant's argument is directed at this Court. Appellant asserts that the author of the memorandum dismissing his direct appeal, President Judge Emeritus Susan Peikes Gantman, "rewrote the record to justify denying [Appellant] relief…." *Id.* at 48. Appellant contends, without any supporting evidence, that PJE Gantman altered the record at various points regarding how various continuances were attributed to Appellant or the Commonwealth as they pertained to Appellant's Rule 600 claim on direct appeal, and that the memorandum dismissing his direct appeal was rife with other factual errors regarding the record pertaining to that claim.[17]

> The Commonwealth argues:

> The instant claim is unreviewable. Assuming *arguendo* that this Court had erred in reviewing his Rule 600 claim on direct appeal, [Appellant]'s recourse was to raise that claim in a petition for allowance of appeal to the Supreme Court of Pennsylvania. He did not do that. For purposes of PCRA review, a petitioner has the burden to demonstrate that his allegations of error have not [been] previously waived. 42 Pa.C.S. § 9543(a)(3). Issues are waived pursuant to the PCRA "if the petitioner could have raised it but failed to do so … on appeal." 42 Pa.C.S. § 9544(b). Because [Appellant] failed to pursue his altered-record claim in the Supreme Court of Pennsylvania, it was waived for purposes of his collateral review.

---

[17] Appellant relatedly, or alternatively, alleges that the Commonwealth or the trial court participated in this scheme. *See* Appellant's Reply Brief at 18. Regardless, our analysis, concluding that this claim has been waived, remains the same.

Commonwealth Brief at 34-35.

We agree with the Commonwealth. Any claims that this Court altered the record, or otherwise misapprehended the record in dismissing Appellant's claims on direct appeal, were immediately reviewable by seeking allowance of appeal with our Supreme Court. Under the PCRA, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding." 42 Pa.C.S. § 9544(b). Appellant's record-alteration claim arose during his direct appeal, as did his related claim that the direct appeal panel misapprehended the facts concerning his Rule 600 claim. Appellant had the opportunity to raise these issues in our Supreme Court, but declined to do so.[18] Accordingly, we deem these claims waived pursuant to Section 9544(b).

## **XIII**

Finally, Appellant asserts that trial counsel was ineffective for failing to object to the lifting of the *nolle prosequi* and his subsequent trial, arguing that the Commonwealth was not permitted to proceed on the *nolle prossed* charges without first re-arresting him, and that counsel should have objected on that

---

[18] Appellant argues that his failure to raise this issue on direct appeal before our Supreme Court is excused because he is raising this claim under the "government interference exception" set forth in 42 Pa.C.S. § 9543(a)(2)(iv), which provides for PCRA relief where "the conviction or sentence" resulted from the "improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court." 42 Pa.C.S. § 9543(a)(2)(iv). However, Section 9543(a) is not an exception to Section 9544(b). Assuming Appellant's claim meets the criteria of Section 9543(a)(2)(iv), he must still satisfy the dictates of Section 9544(b).

basis. Appellant's Brief at 49. Appellant provides no support for this claim beyond his bald citation of the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Appellant fails to offer any analysis of how these provisions support his assertion that a case cannot proceed to trial, following reinstatement of *nolle prossed* charges, unless the defendant is re-arrested. Accordingly, we deem this claim waived for lack of development. **See Walter**, **supra**.

## Conclusion

We affirm the order denying Appellant's PCRA petition with respect to all but Appellant's first, seventh, and ninth claims, for the reasons discussed *supra*. With regard to those three claims, we vacate the portion of the order denying relief and remand for further proceedings consistent with this memorandum.

Order **affirmed** in part and **vacated** in part. Case **remanded** for further proceedings. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/24/2021

- 47 -